(No. 21155.—

THE COMMISSIONERS OF DELAND SPECIAL DRAINAGE DISTRICT, Appellees, *vs.* CLIFTON M. WARNER *et al.* Appellants.

*Opinion filed April 23, 1932.*

F. K. Lemon, (L. O. Williams, of counsel,) for appellants.

Herrick & Herrick, for appellees.

Mr. Commissioner Partlow reported this opinion:

Appellees, the commissioners of Deland Special Drainage District of Piatt county, Illinois, filed their petition in the county court of Piatt county under the Farm Drainage act against appellants to condemn a strip of land through the farms of appellants for drainage purposes. Appellants filed an answer, also a cross-petition, in which they denied the right of appellees to condemn the lands and alleged certain facts relative to the value of the land taken and the damage to land not taken. There was a trial by jury, they

inspected the land and returned a verdict for appellants for $3724.40 for land taken and found that they were not entitled to any damages for land not taken. Judgment was entered upon the verdict and an appeal was prosecuted to this court.

Appellants insist that the verdict and judgment are inadequate to compensate them for the damages to their property; that the amount awarded as damages cannot be sustained under any reasonable construction that can be placed upon the evidence; that the court erred in refusing to admit proper evidence as to the cost of constructing necessary fences along the line of the ditch, and that there was error in the giving and refusing of instructions.

Appellants own 640 acres of land in one section. It is divided into two farms. The east one is the east half of the section and the west one is the west half of the section. There are farm buildings on each of the farms. The buildings on the east half are in the southeast corner of the section. The buildings on the west half are near the center of the west side of the section. The main ditch is 35 feet wide, eight or nine feet deep, about 6634 feet long and contains 5.36 acres of land. A strip 50 feet wide on each side of the main' ditch is being condemned, on which the dirt from the ditch is to be piled. These two strips contain 14.14 acres. The ditch enters the section at the northeast corner and extends parallel with and adjacent to the north section line for almost a quarter of a mile. Just before it reaches the northwest corner of this 40-acre piece it turns in a southwesterly direction and extends almost in a straight line diagonally through the northwest quarter of the northeast quarter and through the southeast quarter of the northwest quarter and passes out of the west boundary of the section near the center of the northwest quarter of the southwest quarter. It extends diagonally through two full quarter-quarter sections, cuts a very small corner off of three other quarter-quarter sections and extends

through the center of another quarter-quarter section. With the exception of about 200 feet the ditch follows the line of a small water-course about 15 feet wide, which now extends through the land. A part of this land is wet and the purpose of the ditch is to drain the wet land. Appellants insist that it will be necessary in order to farm this land properly after the ditch is constructed, to build and maintain five bridges across the ditch and to construct fences along each side of the ditch, and that they are entitled to the value of the land taken, the cost of constructing the bridges and fences, and the damage to the land not taken.

One witness placed the value of the 5.36 acres at $120 per acre, one placed it at $130 per acre, three placed it at $140 per acre, two placed it at $150 per acre, one placed it at from $150 to $175 per acre and one placed it at $175 per acre. There was only one witness who testified to any damage to lands not taken, and there is no evidence as to any benefits which may be set off against any damage to lands not taken. One witness placed the damage to the farms at three dollars per acre, but he testified that there would be no damage to the remainder of the farms except for the land taken for the main ditch and the two 50-foot strips provided sufficient bridges were constructed. One witness testified that the land was worth $140 per acre at the time the petition was filed, and that after the ditch is dug it will be worth $150 per acre provided two bridges are constructed. Six witnesses testified that the 14.14 acres are worth $60 per acre. One witness testified that three bridges will have to be built and three witnesses testified that only two bridges will be necessary. Several witnesses testified to the cost of constructing these bridges, the evidence varying from $650 to $1500 per bridge, depending upon the type of bridge constructed. The preponderance of the evidence is that a bridge sufficient for all practical purposes can be built for $650. E. E. Churchill, who has lived on one of these farms since 1882 and who has farmed

it since 1895 and who is probably better able than any other witness to know the conditions on these farms, testified that only two bridges would be necessary and they could be built for $650 each.

This court has held that in cases of this kind, where the evidence is conflicting, where the verdict is within the range of the testimony and where the jury viewed the premises, this court will not interfere with the finding of the jury as to the amount of damages unless there is something in the record showing that they were influenced by passion or prejudice or that there have been incorrect rulings which might mislead the jury. (*Illinois Power and Light Co.* v. *Bedard,* 343 Ill. 618; *City of Chicago* v. *McGowan,* 324 id. 164; *Forest Preserve District* v. *Barchard,* 293 id. 556.) The 5.36 acres, valued at $150 per acre, are worth $804. The 14.14 acres, valued at $60 per acre, are worth $848.40. Two bridges at $650 each amount to $1300. These three items make a total of $2952.40. If a third bridge is constructed the total would be $3602.40, which is within $122 of the award made by the jury. The verdict, as far as the land taken and the construction of bridges are concerned, is within the scope of the evidence, and the judgment should not be disturbed upon the ground that the amount is inadequate.

Appellants insist that proper evidence was excluded as to fencing the ditch on both sides and the cost thereof, and that improper instructions were given on that question. In 1927 section 197 of chapter 42 (Cahill's Stat. 1931, p. 1170,) was amended by providing that the cost of building or replacing any farm or highway bridges across the open drains of districts organized subsequent to June 29, 1919, should be taken into consideration in determining the amount of damages to be allowed to the land owner cr commissioner of highways, as the case might be. Under this statute it was proper to consider the cost of constructing necessary bridges, but there is no statutory provision

which requires appellees to fence the ditch upon both sides. It may be possible that circumstances might be shown which would require the building of certain fences, but the evidence in this case does not show such a necessity. C. M. Warner, one of the appellants, was the only witness who testified on the question of fences. He testified that these farms are used as grain and stock farms; that the stock consists of hogs, horses, cattle, and sometimes sheep, and that the ditch crosses seven 40-acre tracts composing four separate fields. He was asked if he had an opinion as to the cost of constructing fences of sufficient strength and capacity necessary for the proper and convenient use of the premises as farms and for the necessary protection of the ditch. An objection was made to this question on the ground, among others, that there was no proper basis for the question, and the objection was sustained. He was asked what would be the cost per rod of a fence such as might be necessary for the proper and convenient use of the land. An objection was sustained to this question. This was the only evidence on the question of the necessity for fencing and the cost thereof. This evidence was not a sufficient basis for the allowance of the cost of fencing. There was no evidence offered as to what the various fields were used for, the manner in which they were fenced or what additional fences might be required. The questions to which objections were sustained did not even tend to sustain the claim that the entire ditch, or any part thereof, should be fenced at the cost of appellees. The rulings on the two questions objected to were proper.

The second instruction refused on behalf of appellants told the jury that in determining the amount of the damages the jury should include the cost of constructing and maintaining such lawful fences, if any, as were necessary for the proper and convenient use of the premises. This instruction was properly refused because there was no evidence upon which to base it, and because any finding of the

jury, under the terms of the instruction, was not limited to the evidence in the case and the inspection of the premises by the jury.

Complaint is made of the nineteenth instruction on behalf of appellees, which told the jury that appellants were not required, as a matter of law, to fence the ditch and that fencing was not a proper element of damage. This instruction announced a correct rule of law. The land owners were not required, under the statute, to fence the ditch, and the cost thereof was not a proper element of damage.

The sixth instruction on behalf of appellees told the jury that the measure of damages for the land taken was the full market value of the land as shown by the evidence. The objection to this instruction is, that under it the jury could not allow anything for the cost of bridges as damages to land taken, and the jury found there was no damage·to land not taken. The third instruction given on behalf of appellants used language meaning, substantially, the same as the language used in the sixth instruction. If either instruction is erroneous both instructions are erroneous. ·Appellants cannot complain of an error in an instruction when their instructions made the same error.

The seventeenth instruction on behalf of appellees told the jury that as to any damages claimed by the land owner over and above damages for land taken the burden of proof was upon the land owner to prove such damages claimed by him. It is insisted that if the cost of bridges is to be allowed as damage to land taken, as stated in the thirty-third instruction, the burden of proof was on appellees to show the cost of the bridges and appellees should have proved such fact in their evidence in chief, which they did not do. Proof as to the necessity for bridges and the cost thereof was admitted on both sides without objection, it was evidently included in the verdict of the jury, and no damage was occasioned to appellants by any uncertainty in either of these instructions.

The twenty-first instruction on behalf of appellees told the jury that their personal inspection of the premises was a part of the evidence to be considered in fixing the amount of damages, and that they had a right to draw their own conclusions from their observation of the premises, in connection with all of the other testimony in the case. The objection to this instruction is, that it gives the jury the right to draw their own conclusions from their observation, and that they might find a verdict on their observation alone, regardless of the other evidence in the case. The instruction is not capable of this interpretation. It tells the jury that they have the right to draw their conclusions from their observation of the property in connection with the testimony offered in the case. The jury had a right to consider their view of the premises. *Village of Oak Park* v. *Hulbert,* 307 Ill. 270; *Department of Public Works* v. *Griffin,* 305 id. 585.

The twenty-third instruction on behalf of appellees, among other things, told the jury that the term "just compensation" includes the fair cash market value of the land taken, and the resulting damage, if any, to the premises not taken. It is insisted that this instruction is erroneous because it omits the cost of bridges. When this instruction is read in connection with the thirty-third instruction given on behalf of appellees there can be no such misunderstanding. The thirty-third instruction told the jury that if they allow the land owner damages for the land taken and damages for the cost and maintenance of bridges, after they had decided these amounts they should add them together and write in this sum as the total amount of damages to land taken. Prior to 1927, when section 197 of chapter 42 of our statutes was amended so as to include the cost of bridges, the elements of damage in cases of this kind were the value of the land taken and the damage to land not taken, against which could be set off the benefits occasioned by the improvement. Since 1927 the cost of

building bridges has been added to the amount which may be recovered in certain cases by the land owner. This is a separate and distinct item. The thirty-third instruction does not tell the jury that it is a part of the damage to land not taken, but it merely tells the jury that after the cost of building bridges is ascertained it may be added to the amount allowed for land taken. These items constitute two separate and distinct amounts and it is apparent that they were so considered by the jury. The fact that the cost of bridges was added to the value of the land taken where they otherwise might have been separated is not sufficient to justify a reversal of the judgment.

The twenty-eighth instruction on behalf of appellees told the jury that if they believe from the whole evidence that they have from their personal examination of the premises arrived at a more accurate judgment as to the value of the premises taken and of the amount of damages, if any, than was shown by the evidence in open court, they might fix the value of land taken, and the damages, if any, over and above the special benefits, if any, at the amount so approved by their judgment formed from their examination of the premises and all the evidence in the case. The complaint is as to the words "if any," as used in the instruction. The words do not refer to the compensation for land taken but refer to the damages to the land not taken. The words are not within appellants' stated objection thereto. When this instruction is read in connection with the eighteenth, twenty-fourth and twenty-fifth instructions given on behalf of appellees there is no error therein.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*