(Nos. 24082 to 24088, incl.—

WESLEY C. CROSBY *et al.* Appellees, *vs.* THE DELAND SPECIAL DRAINAGE DISTRICT, Appellant.

*Opinion filed December 15, 1937.*

WIRT HERRICK, and RALPH J. MONROE, for appellant.

GROVER W. WATSON, and FRANK B. LEONARD, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The commissioners of DeLand Special Drainage District in the county of Piatt in this State made a levy against the lands of the district for improvements of the open drains. The commissioners filed a special assessment roll and assessed the lands which it was alleged would receive benefits from the improvement. The owners of seven separate tracts of land so assessed appealed from the assessment to the county court, claiming that the assessments so made exceeded the benefits which would accrue to their separate lands from the construction of the improvement.

The appeals were consolidated for trial and were heard before a jury in the county court. The jury rendered a verdict reducing the assessments on twenty-three parcels or units of the seven separate tracts mentioned. An order was entered modifying the assessments made by the commissioners to correspond with the amount found by the verdict of the jury in each case. Separate appeals to this court were prosecuted by the drainage district from the decretal

orders as to each one of the seven tracts of land described. Upon a motion made and allowed in this court the cases again have been consolidated for hearing.

The assessment as it affects the separate lands involved on the appeals, as shown by the assessment roll and the assessment as reduced by the jury, is as follows:

VERDICT OF THE JURY ON ASSESSMENT OF BENEFITS ON APPEAL FROM COMMISSIONERS SPECIAL ASSESSMENT TAX LIST.

| Name | Acres | Comm. Assessment per Acre | Comm. Assessment Total | Assessment as Made by the Jury |
|---|---|---|---|---|
| Edward Marks.... | 40 | $15.98 | $639.35 | $342.40 |
| Edward Marks.... | 40 | 15.14 | 605.70 | 331.60 |
| Wesley Crosby.... | 36.61 | 15.14 | 554.42 | 275.31 |
| Wesley Crosby.... | 40 | 14.30 | 572.05 | 296.00 |
| Wesley Crosby.... | 20 | 14.20 | 286.03 | 148.80 |
| Wesley Crosby.... | 18.30 | 15.98 | 292.49 | 145.30 |
| Crosby Heirs..... | 17.89 | 16.06 | 287.17 | 155.28 |
| Crosby Heirs..... | 18.92 | 14.25 | 269.67 | 159.68 |
| Crosby Heirs..... | 35.83 | 16.03 | 574.40 | 300.25 |
| Crosby Heirs..... | 40 | 14.30 | 572.05 | 354.00 |
| Bertha Bell Swartz | 4 | 13.46 | 53.84 | 29.00 |
| Bertha Bell Swartz | 16 | 13.46 | 215.36 | 137.28 |
| H. L. Swartz...... | 40 | 15.14 | 605.70 | 374.80 |
| H. L. Swartz...... | 40 | 14.30 | 572.05 | 303.60 |
| H. L. Swartz...... | 40 | 13.46 | 538.40 | 327.60 |
| H. L. Swartz...... | 40 | 14.30 | 572.05 | 351.60 |
| Elmer Hersch..... | 34.41 | 16.83 | 578.98 | 270.12 |
| Elmer Hersch..... | 38.70 | 16.83 | 651.13 | 305.73 |
| Elmer Hersch..... | 40 | 15.14 | 605.70 | 314.80 |
| Ed Holmes Clyde Holmes Oscar Holmes}.... | 39.95 | 14.91 | 595.87 | 352.76 |
| Ed Holmes Clyde Holmes Oscar Holmes}.... | 40 | 12.62 | 504.75 | 300.80 |
| Ed Holmes Clyde Holmes Oscar Holmes}.... | 40 | 13.46 | 538.40 | 347.60 |
| Ed Holmes Clyde Holmes Oscar Holmes}.... | 40 | 13.46 | 538.40 | 336.00 |

The several appeals consolidated involve the same questions of law and practically the same questions of fact. There are 28,560 acres of land served by the drainage dis-

trict. The lands of the owners who are parties to this appeal comprise 780 acres and are embraced within sections 22 to 26 of township 20 in Piatt county. There are branch drains in the drainage system of the district, two of which, branch No. 1 and branch No. 2, extend through or in the vicinity of and serve the lands of the above mentioned owners. The total estimated cost of the proposed improvement of deepening and cleaning the ditches of the district is $148,044.58. Of this amount the commissioners assessed as benefits to the owners above mentioned something over $11,200. The jury reduced each assessment so that the aggregate amount was a little over $6200 on the twenty-three units or parcels of the seven tracts mentioned. (The assessments were of forty-acre tracts or fractions thereof, as provided by statute.) The average amount per acre as assessed by the commissioners was something in excess of fourteen dollars, while the reduction by the jury made the average assessment a little under eight dollars an acre.

The testimony on behalf of the owners of the land in question (hereafter called the landowners) was based on the theory that there was, for the most part, sufficient drainage of the lands in question and that water does not remain standing thereon, except in a few specified instances; that crops were not damaged, and that the benefits assessed by the commissioners were too high.

Alfred M. Danely, an engineer for many drainage districts in neighboring counties, who had specialized in municipal engineering and farm drainage and who had experience in investigating lands in the drainage districts for the Federal Land Bank, testified that he had made an inspection and survey of land levels before the district had done any work on the drains, and determined the elevations on different portions of the land. He expressed an opinion as to the benefit each of the tracts of land would derive from the improvement. Taking into consideration the levels he ascertained, the natural slopes of the land, the depth of

the drain, the rate of flow of water through it and the exist-ence of tile in the tracts, the witness was of the opinion the land would be benefited about two or three dollars an acre. He testified specifically concerning each of the twenty-three units of the tracts in question, and that nineteen would receive benefits of two dollars per acre; that three would benefit to the extent of three dollars per acre and the six-teen-acre tract of Bertha Bell Swartz would receive no benefit.

Other witnesses on behalf of the landowners were, a land appraiser for a banking company, who was formerly the manager and secretary of a farm loan association, two real estate brokers, one largely interested in farm transac-tions, a drainage contractor, eight farmers, and four own-ers of tracts involved here. Without setting forth the tes-timony of these witnesses separately, thirteen of them ex-pressed opinions as to the extent of the benefits to the lands. Their estimates ranged from one to five dollars per acre on the different tracts. According to some of the testimony some of the parcels received no benefit. It appeared from this evidence that much of the land in question was tiled and the tiles drained into the ditches in question. None of the witnesses observed any particular damage to crops on account of standing water. It was testified there were three small basins on five or six acres of one tract, and it was admitted the improvement would benefit that land.

On behalf of the drainage commissioners, J. Robert Bower, a civil engineer, county surveyor and county super-intendent of highways, testified to having prepared the profiles which were being used in the improvement in ques-tion. He described the course and depth of the ditch at different points and testified concerning the natural drain-age conditions of the district, and stated how much it was proposed to lower the ditches. It appeared from the testi-mony that the main drain would be lowered as much as six feet in some places and more than four feet in other

parts. Ten farmers, or owners of farms, a grain merchant, who was formerly a farmer, and a former drainage commissioner testified on behalf of the district. Most of these witnesses testified to the value of the benefits to the lands. Their estimates of value to the various tracts varied from forty dollars an acre for one tract, thirty-five dollars for another, twenty-five dollars for some, seventeen dollars for two tracts and fifteen dollars an acre for much of the land.

One of these witnesses testified to the fact that in a previous year a bridge had been washed out on the Hersch land and that driftwood and other material was deposited in the ditch in times of high water. (From other testimony it appeared the ditch on the Hersch land was cleaned out subsequent to the time the bridge washed out.) The witness noticed low land in the Holmes' tract during the time of freshets, and, on about an eighth of an acre, oats were left standing because of their failure to mature. One witness testified that on the Mark's land two basins stood, and that fifteen acres of corn and twenty acres of oats on that land each made less than twenty bushels to the acre in one year. He had also seen mud in the bottom of tile on that farm. Another witness testified that he had seen water running over the banks of the ditch on the Crosby land. Another witness testified that he had seen water standing on the land of the Crosby heirs in the years 1924, 1926 and 1929, and previous to the trial he had observed that the water in the ditch on the Hersch land was not moving. He had seen oats washed out on the Mark's land, and there was a pond in the corner of one of the parcels of that tract. One witness testified that he considered a good drainage system was worth twenty dollars per acre to any farm. A highway commissioner testified that there was difficulty in keeping the highways in good condition where the roads meet at the intersection of the Holmes, Crosby, Swartz and Vittum land, due to excessive water in that vicinity.

The jury saw and heard the witnesses and viewed the lands in the district proposed to be improved. The jury apparently was of the opinion that the witnesses for the drainage district were no better qualified to judge of the value of the benefits to the different portions of land, as to which the testimony was given, than were the witnesses for the landowners. We cannot say that the evidence preponderates in favor of the drainage district on the facts of the case. When land was being condemned in a part of this same district for drainage purposes we held that where the evidence is conflicting and where the jury views the premises and the verdict is within the range of the testimony, the court will not interfere with the finding of the jury as to the amount of damages, unless there is something in the record showing that the jury was influenced by passion or prejudice or that there have been incorrect rulings which might have misled it. (*DeLand Drainage District* v. *Warner,* 348 Ill. 376.) The same rule would apply to the finding of the jury and judgment of the county court upon the question of benefits. If we cannot say that the finding and judgment were palpably against the weight of the evidence the judgment of the trial court on the question of benefits will not be disturbed. *City of Chicago* v. *Marsh,* 238 Ill. 254.

It is contended that there was error in a ruling of the court on the cross-examination of a witness and in the giving and refusal of instructions. The question on cross-examination related to the effect of lowering the bottom of the ditch on one of the tracts of land, and it is asserted that it is not proper to consider the effect of an improvement as confined to a particular place, for benefits are assessable by reason of the entire improvement. The cross-examination in question was proper to rebut a possible inference which might have been drawn from the direct testimony that the deepening of the ditch to the extent tes-

tified was necessary to drain that particular land, whereas that was not the fact.

Complaint is made of instruction No. 5. It was, in substance, that though the assessment roll had been admitted in evidence it was not conclusive upon the jury but if it believed, from the preponderance of the evidence, that the lands of the landowners or any tract thereof were assessed in a greater amount than the benefits to accrue to such lands or tract thereof by the proposed drainage, it would be the jury's duty to lower the assessment against such tract or tracts to an amount which the jury believed, from the preponderance of the evidence, was the correct amount of benefits against such tract or tracts. An assessment should not exceed the benefits to be derived from a proposed improvement. (*Schwartz* v. *Big Lake Drainage District,* 307 Ill. 209; *People* v. *Welch,* 252 id. 167.) There was no error in giving the instruction.

It is contended that instruction No. 7 informed the jury that the assessment as fixed by it should not be more than the benefits, but did not caution it that it should be for the full amount of the benefits, and also that it advised the jury that it should consider only those benefits conferred directly and solely by the work proposed to be done in the district and resulting solely and directly from the improvement. The objection is not tenable as to either portion of the instruction. The jury would not be misled as to the first part of the instruction for it was advised by another instruction that if it could not say or was in doubt as to whether any tract of the landowners was assessed more than it would be benefited it would be its duty to sustain the assessment roll. This latter instruction was submitted on behalf of the drainage district and it would not be in position to complain as to the instruction mentioned. (*DeLand Drainage District* v. *Warner, supra.*) As to the second part of instruction No. 7 it was explained in the same instruction that any general rise in value from

any general cause was not a direct benefit, and the jury would understand from this, and other instructions, what were the direct benefits. The instruction was proper.

It is contended that the refusal of one tendered instruction was error. It advised the jury that although it might find, from the evidence, that the lands, or some of them, are already provided with some drainage, if it further found from the evidence that additional benefits would be received by the lands from the present improvement there was no objection to an assessment for the improvement. Where the issues in a case are simple and the jury is fully instructed upon the law it is not reversible error to refuse further instructions, even though they state correct principles. (*Freesen* v. *Scott County Drainage District,* 283 Ill. 536.) Some of the instructions, to which objections were made, did not purport to state all the law applicable in the case but only to certain conditions. No instruction need state all the law in a case. It is sufficient if, taken as a series, the jury is correctly advised as to the law applicable to the case. (*Minnis* v. *Friend,* 360 Ill. 328.) The jury was given twenty-seven instructions which, taken as a series, informed the jury of the effect of the assessment roll when introduced in evidence, the right of a dominant landowner to drain to lower lands, the proper elements to be considered in fixing the amount of benefits and sufficiently advised the jury of the law in the case. We have examined all of the instructions and do not find that prejudicial error was committed in giving or refusing to give any instruction. A cross-error has been assigned which it is unnecessary to consider. There is no prejudicial error in the record.

The orders of the county court are affirmed.

*Orders affirmed.*