(No. 28571.—

UNION DRAINAGE DISTRICT No. 5, Appellee, *vs.* EDWIN H. HAMILTON, Appellant.

*Opinion filed May 23, 1945.*

488

HARRY S. STREETER, VERNON G. BUTZ, and JOHN H. BECKERS, all of Kankakee, for appellant.

EUGENE J. LAMARRE, and DYER & DYER, (WAYNE H. DYER, of counsel,) all of Kankakee, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal by Edwin S. Hamilton from a judgment of the county court of Kankakee county confirming a drainage assessment against his lands in said county.

The correct name of the district is "Bourbonnais Union Drainage District No. 5 of the towns of Bourbonnais and Kankakee, county of Kankakee and State of Illinois." It contains 1296 acres and was originally organized under the Farm Drainage Act about forty years ago, but was changed by a vote of the landowners May 1, 1941, into a levee and drainage district under the Levee Act. The system of drainage of the district since its organization has consisted of an open ditch and tile drain underneath, with an outlet into Soldier creek on the west, and a connecting line of tile to the east and south and thence to the northeast part of the district. The open ditch is located on the south side of the highway running east and west along the north side of the district. Appellant's lands are three adjoining eighty-acre tracts in the west end of the district,

lying immediately south of the highway and ditch. In 1938, approximately $66,000 was expended by the drainage commissioners in repair work in the district. Of this sum, $56,000 was furnished by the W.P.A., and the remainder by the landowners in the district. The original tile was taken out and new tile laid. Appellant, who was one of the drainage commissioners at the time this work was done, testified that the new tile was larger than the tile that was there before.

June 23, 1942, the commissioners filed their petition under section 37 of the Levee Act asking for the levy of an assessment of $6500 for the purpose of repairing and re-laying a portion of the tile. The petition alleged that the tile between stations 48 and 84 had become partially blocked and silted to an extent, in some instances, of two thirds of the diameter of the tile, and that, in order to make the tile work at its maximum efficiency and afford adequate and sufficient drainage for the district, it was necessary that the same be taken up, cleaned and replaced at the proper grade. The prayer of the petition was for an order to levy an assessment therefor and to further levy an annual assessment for repairs. Afterward, on July 1, 1943, the commissioners filed a supplementary report of the engineer, dated June 30, 1943, recommending that the repairing and re-laying of the tile, as proposed by the petition and the report attached thereto, be abandoned, and in lieu thereof a new tile line be constructed over a new location therein specified, at an estimated cost of $9,454.14. On November 6, 1943, another report of the engineer was filed, which was dated November 4, 1943, and designated as supplemental to his first report. In this report of November 4, he abandoned the construction of the new tile line as recommended in his report of June 30, 1943, and again recommended that the main tile between stations 48 and 84 be cleaned, repaired and re-laid, and in addition recommended that the open ditch from station 0

to station 62 be cleaned to the profile indicated on the plat attached. December 10, 1943, the commissioners filed their amended petition with the engineer's report of November 4, 1943, the estimate of cost, and the open ditch specifications. The prayer of the amended petition was that the court approve and confirm this last plan and order an assessment of $8,984.01, being the estimated cost of the proposed work, and also order an assessment of annual benefits to thereafter keep said work in repair.

To each report of the engineer and to both the original petition and the amended petition appellant filed answer and objections, all of which were substantially the same. He set up in each that the proposed work was neither necessary, feasible nor proper and would not adequately protect or drain the lands of the district. Upon a hearing before the court, appellant's objections were overruled and the court entered an order approving the amended petition and directing the commissioners to prepare and file an assessment roll to cover the cost of the work proposed and also to include therein a further assessment of annual benefits for thereafter keeping the work of the district in repair. The assessment roll was filed. Appellant made no objection to his assessment for annual benefits, but filed objections to his assessment for the proposed work on the ground that his lands are assessed more than they will be benefited by the work proposed and more than their proportionate share of the cost of the improvement. He filed objections on other grounds, which it appears he subsequently withdrew. There was a trial by a jury which viewed the land and the assessment roll was confirmed. This appeal is from the order confirming the assessment against appellant's lands and also from the order overruling his objections to the amended petition.

It is the contention of appellant that since it appears without contradiction that within three years from the laying of the tile in 1938, it was silted and filled in some

places up to two thirds of its capacity, the approval of plans for re-laying said tile in the identical location where it will in a few years again become silted and filled up is an abuse of discretion by the trial court. It is the theory of appellant that the clogging of the tile resulted from the quicksand in which it was laid and that the county court's order of April 4, 1944, approving plans for similar work of similar inadequate and temporary character, should be reversed.

The engineer of the district testified that the sand between stations 48 and 84 was stable enough that there was no reason why the tile, if properly laid, would not be as permanent as any tile line constructed; that the present condition of. the tile was due to its improper installation by the W.P.A.; that the tile had separated at its joints in some places to such an extent that a shovel could be placed between the tile; that any tile, if not properly laid, will separate and become clogged and silted; that if, in the proposed re-laying of the tile, quicksand should be encountered, they would lay either planks or concrete beneath them; and that if the tile was properly laid, it would be as permanent in one place as another. He further testified he found no indication whatever of quicksand; and that it was his opinion, and he had been told by a tiler in whom he had confidence, that there was no quicksand at the location of this tile. He further stated that while the tile was, in his opinion, too small, the cost of rebuilding the whole district with a tile large enough to carry 100 per cent protection would be prohibitive, and testified that if the tile was cleaned, repaired, and re-laid as proposed and thus made to work to its full efficiency and the ditch cleaned as proposed, this would provide good service for the district and be sufficient, except in times of extreme floods, and would be the cheapest feasible plan to afford proper and adequate drainage. In view of this testimony, we cannot say that

the trial court abused its discretion in granting the prayer of the amended petition.

Appellant contends no right of way has been obtained for the proposed work on the open ditch and therefore the county court could not lawfully order the making of the assessment. This objection was not raised in the county court and for that reason appellant is not entitled to have it considered here. The amended petition alleged that rights of way had formerly been secured from the landowners and no additional rights of way were necessary to be acquired for the proposed work. Appellant insists the lack of the necessary rights of way for the proposed work on the open ditch is apparent on the face of the petition, maps and profiles, and is established by the evidence of E. H. Ashdown, an engineer testifying for appellant. The amended petition and engineer's report attached thereto provide merely that the ditch be cleaned to the profile indicated on the plat. No plat, map or profile is shown in the abstract, and this court will not search the record to find grounds for reversal. Ashdown testified that if the work on the ditch was completed according to specifications, with a three-foot bottom and a one-to-one slope, it would be wider than the area between the traveled roadway and the fence line. The engineer of the district testified that the ditch was to be lowered just enough to clean the bottom to a proper grade; that the plan included cleaning the ditch to a three-foot bottom and a one-to-one slope, which would make a probable increase in depth of one and one-half feet and a probable two-foot increase in width. The record does not show that the drainage district had not, in fact, previously acquired the necessary right of way from appellant or his predecessor in title for the work on the ditch in the highway adjoining his land. Upon appeal, every reasonable intendment not negatived by the record will be indulged in support of the judgment. Error is

never presumed by a reviewing court, but must be affirmatively shown by the record. (2 R.C.L. pp. 219-221, sec. 184; 5 C.J.S. 265, sec. 1533; *People* v. *Throop,* 359 Ill. 354; *People* v. *Gerke,* 332 Ill. 583; *Kiesewetter* v. *Knights of Maccabees, 227* Ill. 48.) Because the ditch may be increased in width by the proposed work and because the record is silent, except for the unchallenged allegation in the amended petition, as to whether the necessary rights of way have been obtained, there is no presumption that they have not been obtained.

We are also of the opinion that the deepening of the open ditch does not, as appellant claims, constitute an unlawful diversion of the surface water of the district over appellant's lands. The evidence shows that there is a ridge or divide in the natural surface of the land about the center or east line of appellant's middle eighty-acre tract, his land west of that line draining naturally to the north and west into Soldier creek, while all of the lands of the district east of the ridge drain naturally to the north and northeast. The waters on the east side run north to the ditch in the highway and then flow west in the ditch to its outlet in Soldier creek, except when the ditch is flooded above its banks, in which case the water flows in its natural course north across the highway and over lands north of the highway not included in the drainage district. When the tile underneath the ditch was taken up and re-laid in 1938, the bottom of the ditch was not replaced at a uniform level, and there are many humps and holes in the bottom of the ditch which hamper and impede the flow of the water to the west through this ditch into its outlet in Soldier creek. The improvement for which the assessment has been made will remove the humps and holes in the ditch and will restore its efficiency as a constituent part of the district's system of drainage. Although the record does not disclose whether this ditch was originally constructed by the highway authorities or by the drainage dis-

trict, it does appear that for approximately forty years it has been affording an outlet for the waters of the district and utilized by the district as a component part of its drainage system and that appellant and his predecessors in title have, for more than thirty years, been taking advantage of the drainage afforded by the district. Appellant, in lieu of his common-law rights of drainage, has adopted the drainage system provided by statute for landowners in drainage districts and cannot complain that the proposed improvement is an unlawful diversion of surface waters of the district from the direction in which they naturally flow, as one of the purposes of a drainage district is to overcome natural conditions. (*Turley* v. *Arnold,* 384 Ill. 158.) In connection with this objection, appellant contends that every drainage district must show that the ditch or drain it proposes to build has an outlet; that the district, having no right to remove the natural barrier to the waters of the district by deepening the ditch and thereby diverting the waters from their natural course into the ditch whose outlet is Soldier creek, could be enjoined from so doing by any property owner along Soldier creek; and that an outlet which may be enjoined at any time at the pleasure of the owner of the servient heritage is no outlet at all. It is the law of this State that before a drainage assessment will be held invalid because of an insufficient outlet, it must appear that the outlet cannot be made adequate for an amount equal to the benefits to the lands affected. *People ex rel. Farrell* v. *Coudy,* 296 Ill. 263; *People ex rel. Dorris* v. *Garner,* 275 Ill. 228.

These last-mentioned objections to the proposed work were also not presented in the trial court. It is too fundamental to require the citation of authority that an objection cannot be raised for the first time in a court of review.

Appellant assigns as error the action of the court in approving the amended petition which included as a part of the improvement the construction of culverts across

the ditch in the highway, and further assigns as error the refusal of the court to instruct the jury that it was the duty of the highway commissioner to construct the culverts and that appellant's land could not be assessed for any benefits caused by the construction of any culvert in the highway adjoining his land. The installation of the culverts in question is made necessary because of the proposed cleaning and deepening of the highway ditch; and the law therefore imposes the duty to construct such culverts upon the district and not upon the highway commissioners. *Brougher* v. *Lost Creek Drainage Dist.* 277 Ill. 156; *People ex rel. Burow* v. *Block,* 276 Ill. 286.

**It is further** contended that, upon the hearing before **the jury, the** court admitted improper and incompetent evidence on behalf of appellee and excluded proper and competent evidence offered on behalf of appellant. Appellant introduced in evidence as an exhibit a profile which had been prepared by the county surveyor for the work done by the W.P.A. in the drainage district in 1938. In rebuttal, Harold D. Tyson, the engineer of the district, was permitted to testify that the present tile which was laid by the W.P.A. did not conform to the specifications shown on the profile and that this failure to follow the specifications would decrease the present drainage of the lands in the district. Appellant says that the inadequacy of the former work was wholly beside the issue in the case and that the sole purpose of this testimony was to prejudice the jury against appellant, who was one of the commissioners of the district at the time the W.P.A. work was done, and cause them to believe that it was appellant's fault that the district was not receiving the benefits contemplated by the original plans for the former improvement. At the time this evidence was admitted, it was expressly stated, both by the court and by counsel for the district, that it was not intended to imply that the failure, in 1938, to follow the specifications and the resulting decrease

of the present drainage of the district, was the fault of appellant. The engineer had previously testified fully, without objection, concerning the defective construction of the former improvement and the consequent impairment of the drainage of the lands in the district. Appellant, himself, had testified that he was one of the commissioners at the time the work was done and had introduced in evidence as his exhibit No. I, the profile of the work. The engineer's testimony that the specifications shown on that exhibit were not followed in the construction of the improvement and that the effect would be to decrease the present drainage of the lands in the district was proper in rebuttal of appellant's exhibit No. I, and, in view of the colloquy between the court and counsel for both sides, could not possibly have caused the jury to believe the present decreased drainage was the fault of appellant.

Complaint is also made because appellant was not permitted, upon cross-examination of the witness William Dupuis, who had testified for the district in regard to benefits, to ask him the question "How much would you say it was benefited because it would raise more crops?" No complaint was made that the witness was not qualified to give an opinion on the question of benefits or that his opinion was predicated on any improper basis. To require the witness to evaluate separately each element of benefit which he had taken into consideration in forming his opinion could serve no useful purpose. We agree with the trial court that this was not a fair question.

The final contention is that the verdict of the jury and the judgment of confirmation are contrary to the manifest weight of the evidence. Appellant testified that his lands were already supplied with sufficient drainage; that he was satisfied with conditions as they were; that he had six strings of tile running north and south the entire length of his land connected with the outlet tile of the district; that his crops have never been destroyed by water; that

water sometimes stands for a space of three days on three acres in the extreme northeast corner of his land, but the rest of his land is drained perfectly. Three other witnesses testified for appellant.. They were Edgar Legris, who lives on the land and formerly owned it; Fred Savoie, who lives north of the road and had farmed the land in the past; and Merrill Taron, whose land adjoins appellant's on the west. All of these witnesses testified that the improvement would not benefit the lands of appellant. Legris said that when there is a flood, six or seven acres of the east eighty are covered with water, sometimes for six or seven days. Savoie testified that he had seen water standing on the south end of appellant's east eighty and also standing for two or three days on the northeast end.

The witnesses testifying for the district were its engineer and two of the drainage commissioners. Tyson, the engineer, testified he had seen water on the northeast corner of appellant's east eighty and also extending pretty well across, and that in his opinion the benefits to the east eighty would amount to $10 an acre and to the rest of appellant's land $5 an acre. William Dupuis, one of the commissioners, estimated the benefits to the east eighty at from $10 to $15 an acre and to the rest of his land about $7 or $8 an acre. Rossie Dennison, the other commissioner, gave it as her opinion that the east eighty-acre tract would be benefited from $10 to $15 an acre, the middle eighty $7 an acre, and the west eighty $5 an acre. Both the witness Dupuis and the witness Dennison testified they had seen water standing on the east and middle eighties.

Section 17b of the Levee Act, as amended July 3, 1935, (Ill. Rev. Stat. 1943, chap. 42, par. 20,) and which applies to this proceeding, (*Turley* v. *Arnold,* 384 Ill. 158,) provides that the jury, in finding its verdict, shall take into consideration its view of the premises as evidence and consider it with the other testimony offered in the case and allowed by the court. Thus, the jury not only has

the right but it is its duty to consider as evidence, because the statute makes the same evidence, the knowledge and information which it has gained from a personal view of the lands. Upon a careful examination of the record, without the advantages which the jury had of a view of the premises and of seeing the witnesses and hearing them testify, we cannot say that the verdict and judgment were palpably against the weight of the evidence. In cases of this character, where the evidence is conflicting and the jury views the premises and the verdict is within the range of the testimony, the court will not interfere with the finding of the jury as to the amount of benefits, unless there is something in the record showing that the jury was influenced by passion or prejudice or that there have been incorrect rulings by which the jury might have been misled. *Crosby* v. *DeLand Special Drainage Dist.* 367 Ill. 462.

The judgment of the county court is affirmed.

*Judgment affirmed.*