**Laurelle M. Rooks, Plaintiff-Appellee, v. George W. Plavec, Defendant-Appellant.**

**Gen. No. 48,818.**

First District, Second Division.

January 29, 1963.

Charles W. Singer, of Chicago, for appellant.

Bellows, Bellows & Magidson, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court:

Laurelle M. Rooks and George W. Plavec were married at Downers Grove, Illinois on June 17, 1944. They cohabited as husband and wife until January 2, 1955,

when they separated. No children were born or adopted as a result of the marriage.

On January 25, 1955, a decree dissolving the bonds of matrimony was entered in the City Court of Calumet City in a complaint brought by the wife on a finding of extreme and repeated cruelty. The decree provided that no alimony be awarded to plaintiff, she having waived alimony in open court. The decree said that all rights of dower, curtesy and homestead of either party in the property of the other ceases and determines and that neither party has any rights against the property of the other except as "hereinabove provided." The decree directed that the defendant pay to plaintiff $9,000 in lieu of all property rights and rights to support at intervals of $900 every 6 months, the first payment to be made on or before February 1, 1955.

On September 26, 1960 plaintiff filed a complaint alleging that on January 3, 1955 the parties executed an agreement in two parts, attached as Exhibits 1 and 2; that she performed all conditions on her part and that the defendant failed to fulfill his promises under Exhibit 2. She asked that Exhibit 2 be declared binding and for judgment in her favor for the amount due. The Exhibits bear the same date. The preamble of Exhibit 1 recites that the parties are estranged and living separate and apart; that the wife has filed a complaint for divorce; that the parties consider it to be in their best interests to settle the respective rights to support, dower, homestead and all other rights of property growing out of the marital relationship which either has or might thereafter have or claim against the other; and that each has been fully informed of the wealth, property and income of the other and of his or her rights. This Exhibit states that in consideration of the mutual covenants and for other good and valuable considerations, the wife agrees to waive all alimony and rights to past, present and future sup-

port and to accept in full settlement $9,000 to be paid at intervals of $900 every 6 months beginning February 1, 1955. She was also to receive all the furniture in their apartment. The preamble of Exhibit 2 also mentions the estrangement of the parties and that they are not living together as husband and wife and that she has filed a complaint for divorce. This Exhibit declares that in consideration of the mutual covenants of the parties and for other good and valuable considerations, the receipt and sufficiency whereof are acknowledged, the parties agree that beginning February 1, 1960, he will pay $900 and an equal sum of $900 every 6 months until such time as the wife shall remarry but that in no event shall the payments extend beyond August 1, 1964. This agreement concludes by stating that the $900 every 6 months is based on a gross salary of $10,000 or more per year and that the $900 payable semiannually shall be prorated downward if the salary of the husband shall be less than $10,000 per year.

The amended answer of the defendant admits that on January 3, 1955 the parties executed Exhibits 1 and 2 but denies that the Exhibits are a single agreement in two parts. He denies that there were no conditions stated or implied to be performed by the plaintiff as a consideration for any promises by him. He admits that he has not paid her anything under the provisions of Exhibit 2 because it is "unenforceable and void for the reasons hereinafter stated." He then outlines the proceedings in the divorce case and says that the decree therein embodied the provisions of Exhibit 1; that in the divorce case she waived the right to any alimony or property settlement other than that specified in Exhibit 1; that the property settlement described in Exhibit 1 and embraced in the decree has been paid in full; that in May, 1960, plaintiff filed a petition in the City Court of Calumet City under Section 72 of the Civil Practice Act seeking to have the decree modified

to include the provisions of Exhibit 2; that on motion of defendant her petition was dismissed and that on May 8, 1961, in Plavec v. Plavec, 30 Ill App2d 345, 174 NE2d 578, the order of the City Court was affirmed.

The answer further states that plaintiff by her failure to inform the City Court of the existence of Exhibit 2 at the time of the hearing on her divorce complaint and in accepting the benefits under Exhibit 1 is estopped from enforcement of Exhibit 2. The answer declares that Exhibit 2 "is wholly without consideration for the reasons set forth herein; that Exhibit 2, if alleged to be based upon a promise for a divorce or for additional alimony or a property settlement not incorporated into the decree is unenforceable because it is contrary to public policy." On January 30, 1962 the court entered a judgment on the pleadings declaring that Exhibit 2 is a valid and binding contract and adjudging that defendant pay plaintiff $3,600, the amount then due and that he pay her the sum of $900 on February 1, 1962 and every 6 months thereafter until August 1, 1964, with a proviso that the $900 installment shall not be paid in the event that the plaintiff shall have remarried and the further proviso that the $900 shall be prorated downward in the event defendant shall have a gross salary of less than $10,000 per year.

Defendant moved to modify the judgment for the reason that the gross salary during 1961 was not $10.-000 or more per year. An affidavit in support of the motion stated that between January 1, 1961 and June 1, 1961 defendant was not employed; that beginning on June 1, 1961 he was employed by J. B. Montgomery, Inc. of Denver, Colorado, and has been so employed since that time; that his salary was established as $900 per month; that he received salary in the amount of $1,300.02 for the period between June 1, 1961 and

July 13, 1961; that he was prevented from receiving additional salary subsequent to July 13, 1961 because of a subordination provision in a loan agreement dated July 13, 1961 between the Corporation and Denver United States National Bank which provided in effect that no salary should be paid to him until after an annual statement of profit and loss was prepared and certified and then only if the net income after taxes plus a figure equal to his salary expense is available after payment of accrued obligations to the bank; that in addition defendant received a salary from Midwest Emery Freight System, Inc. of Chicago of $3,980.64 for services performed during 1960; that defendant's gross salary for 1961, supported by Federal withholding statements issued by J. B. Montgomery, Inc. and Midwest Emery Freight System, Inc., was $5,281.26.

Although no answer was filed or required to be filed to the motion to modify the judgment the record indicates that the court treated the matter as though plaintiff had traversed the statements in the affidavit. The court entered an order reciting that having read the affidavit, having heard the testimony of the defendant and arguments of counsel and that defendant voluntarily left a responsible position paying in excess of $10,000 per year in October 1960, because of normal business pressures; that he was not employed between October 1960 and June 1961; that during this period he was not hospitalized, bedridden or under a doctor's care; that he was in a position to accept employment paying in excess of $10,000 per year and did not actively seek "said employment"; that for several months prior to June 1961 he was negotiating for the purchase of the controlling interest in J. B. Montgomery, Inc. of Denver, Colorado, a motor carrier; that in June 1961 he became President and principal stockholder; that his salary was established at $900 per month; that he received a salary from this

motor carrier in the amount of $1,300.02 for the period between June 1, 1961 and July 13, 1961; that he was prevented from receiving additional salary subsequent to July 13, 1961 because of a subordination provision in a loan agreement dated July 13, 1961 between the corporation and a Denver bank which provided in effect that no salary could be paid to the defendant until after an annual statement of profit and loss after taxes of the corporation, plus a figure equal to defendant's salary was available after payment of accrued obligations to the bank; that defendant "caused" execution of the agreement in order to secure money to finance the purchase of the capital stock of the corporation and that in addition to the salary received from the corporation defendant during 1961 received a salary from his former employer in the amount of $3,980.64 for services performed during 1960 and that the gross salary received by defendant during 1961 was $5,281.26. The court concluded that the defendant did not avail himself of a reasonable opportunity to seek employment during 1961 prior to June 1, 1961 and denied the motion to modify the judgment. Defendant, appealing asks that the judgment and the order denying the motion to modify it be reversed, that the trial court be directed to find Exhibit 2 to be invalid and unenforceable and to dismiss the action, or in the alternative to require the trial court to grant defendant's motion to modify the judgment.

The first point advanced by the defendant is that the lack of consideration precludes the enforcement of Exhibit 2 as a valid and binding contract. Defendant's answer does not say that the agreement contained in Exhibit 2 lacks consideration. The answer says that it is without consideration "for the reason set forth herein." The two agreements were made the same day, at which time the parties were separat-

ed. The part of Exhibit 1 providing for the payment of $9,000 was put into the decree and was performed by the defendant. The agreement requiring further payments beginning on February 1, 1960, in Exhibit 2, was not put into the decree. The decree provided that no alimony be awarded to the plaintiff. It is generally held that where a separation is imminent or has already occurred an agreement making a fair and equitable provision for the separate support and maintenance of the wife and for a settlement of property rights is not against public policy. In Shankland v. Shankland, 301 Ill 524, 134 NE 67, where through oversight or neglect the contract was not made a part of the decree, the court said, pp 531–2: "We think that, inasmuch as she has performed this contract entirely upon her part, it would be a most inequitable thing for appellee to persist in not carrying out the remainder of the contract on his part. It is entirely performed except as to the part not performed by him." The court commented, p 533: "that there are respectable authorities which hold that such a contract as the one entered into in this case is not necessarily void because it is entered into prior to and pending divorce proceedings." See also, 17 CJS Contracts, p 620, § 235c. In the instant case there are two contracts. Exhibit 1 is more definite than Exhibit 2 and was the monetary provision which was included in the decree. This would be advantageous to the plaintiff should she require the aid of the court in enforcement. For reasons best known to the parties the provisions of Exhibit 2 were not put into the decree. We do not think that the proceeding under Section 72 of the Civil Practice Act affects the issues presented to us in the instant appeal. It will be noted that the Plavec opinion in 30 Ill App2d 345, 174 NE2d 578, says at page 350 that plaintiff has not presented grounds for relief under Section 72 of the Civil Practice Act,

305

"whatever actionable rights she may have under Exhibit 3." This document is called Exhibit 2 in the instant appeal.

██ Provisions as to the duration of a contract are to be construed to effectuate the intentions of the parties as evidenced by the language employed. Exhibits 1 and 2 show that it was the intention of the parties that the defendant should continue to pay after the performance of the first agreement. The divorce decree does not attempt to abrogate or nullify the promise of the defendant to make the additional payments prescribed in Exhibit 2. There was a valid consideration for the two Exhibits.

██ A second point urged by the defendant is that prior adjudication of the parties' rights precludes enforcement of the agreement. There was no prior adjudication of plaintiff's right to recover under Exhibit 2 in the divorce decree or the order disposing of plaintiff's petition under Section 72.

██ Defendant asserts that public policy demands that the judgment be reversed. We have said that agreements like those incorporated in Exhibits 1 and 2 are valid. There is no contention that either of the Exhibits was executed for the purpose of stimulating or inducing a party to institute divorce proceedings or that these Exhibits evidence collusion to secure a decree of divorce. The promise of defendant in Exhibit 2 is supported by a valid consideration and does not violate any rule of public policy. It is interesting to note that in his notice of appeal the defendant does not ask for the trial of any factual issue. He assumes that the issues can be disposed of by the pleadings. He asks that we direct the trial court to hold the agreement invalid and to dismiss the action, or in the alternative to modify the judgment.

██ We turn to defendant's contention that the denial of his motion to modify the judgment was an abuse of discretion. The order denying the motion

306

to modify recites that the court heard the testimony of the defendant. As the defendant did not bring to us a transcript of his testimony we assume that the absent testimony supports the judgment. Every reasonable intendment not negatived by the record will be indulged in support of the judgment. "Error is never presumed but must be affirmatively shown by the record." Union Drainage District #5 v. Hamilton, 390 Ill 487 at pp 493–4, 61 NE2d 343: Goldschmidt v. Chicago Transit Authority, 335 Ill App 461, 82 NE2d 357. The trial judge evidently thought that the defendant acted in a manner designed to shift his earning power from income to the purchase of capital assets and that his efforts were motivated by a desire to defeat plaintiff's rights. He cannot by unilateral action defeat his former spouse in her just claim under Exhibit 2. We are of the opinion that the trial judge decided the case correctly. Therefore the judgment and order are affirmed.

Judgment and order affirmed.

BRYANT, P. J. and FRIEND, J., concur.