(No. 37032.—

SNY ISLAND LEVEE DRAINAGE DISTRICT, Appellee, *vs.* DOROTHY MEYER *et al.,* Appellants.

*Opinion filed March 22, 1963.—Rehearing denied May 29, 1963.*

SCHIMMEL and SCHIMMEL, of Pittsfield, for appellants.

GRIGSBY & IRVING, of Pittsfield, and DOBBINS & FRAKER, of Champaign, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is a proceeding to assess benefits and annual benefits against owners of approximately 100,000 acres of land within the Sny Island Levee Drainage District, and to con-

demn approximately 10,000 additional acres in the district for drainage rights of way. Thirty-eight sets of landowners filed objections to assessments levied against their lands and twelve sets of landowners objected to the compensation fixed for their lands taken and the damages allowed for lands not taken. The jury heard the assessment evidence, viewed the lands and rendered its verdicts, and the verdicts were confirmed by the trial court. Thereafter the twelve condemnation cases were heard by the jury. The premises were viewed, verdicts rendered, and the trial court entered an order confirming the awards. Identical post-trial motions filed in the assessment and condemnation cases were denied and the defendants appeal to this court by virtue of the provisions of the Illinois Drainage Code, (Ill. Rev. Stat. 1961, chap. 42, par. 12—16,) and the Eminent Domain Act. Ill. Rev. Stat. 1961, chap. 47, par. 12.

The District was organized in 1880. It is about 50 miles long extending from Adams County southerly through Pike County into Calhoun County and is bounded on the east by the river bluffs and on the west by a levee along the Mississippi river. The District slopes gradually from north to south and is bisected over its entire length by Sny Channel which empties into the Mississippi. There is no levee at the south end so that in times of high water it backs up the Sny into the District.

Between 1937 and 1941 the Federal government constructed navigation dams at Winfield, Clarksville, and Sauerton, Missouri, to maintain a nine-foot nagivation channel in the river. These caused the water level to rise upstream and excess seepage in the drainage district resulted. Congress authorized the Corps of Engineers to design an interior project and another to improve the Main Stem River Levee. The government has estimated that it will spend $26,500,-000 on the two projects. The Levee District is to acquire rights of way, relocate power and telephone lines and roads, and build drainage structures. The plans include

raising the Main Stem River Levee three feet, placing a levee across the south end of the District to prevent water backing into the district, relocating creeks to empty directly into the river, installing pumps and making many internal changes. The District's share of the cost is estimated at $3,422,000.

Lands in the District were divided into about 4500 tracts owned by approximately 550 owners, and in levying the assessment the commissioners took into consideration the benefits to accrue from the whole project. The District was divided into 18 classes, each class consisting of an area with an average elevation one foot lower than its adjacent area to the north. The assessments increased in each area starting at the north and proceeding south since the elevation of the Sny lowers as it proceeds south. Certain physical characteristics in the areas were also taken into consideration, such as seepage, sandy soil, elimination of creek hazards and impounding of water near pump sites. The maximum assessments, before adjustment, progressed from $35.22 per acre in the northernmost area to $50.22 in the southernmost. In each instance the minimum assessment was fixed at $15.22 per acre. The court fixed $150,000 for annual maintenance and the assessment as spread ranged from $1.00 to $1.70 per acre in proportion to the benefits from the project.

We note that defendants have failed to argue 8 of their 19 points and 4 of their 17 so-called "assignment(s) of error". Such points are deemed waived and will not be considered under our Rule 39. (Ill. Rev. Stat. 1961, chap. 110, par. 101.39.) Defendants raise some general points relative to the assessment portion of the proceedings which will be considered prior to taking up their specific objections to the assessments on particular tracts.

It is charged that the engineer for the District was permitted to testify that the District would benefit by the government's contribution of $26,500,000 toward the proj-

ect to the prejudice of the defendants. We find some difficulty in following defendants' argument. Apparently it is based upon the rule set out in *Little Beaver Special Drainage District* v. *Livingston,* 270 Ill. 582, that an expert witness may not testify that the district as a whole would be benefited as much or more than the entire assessment. The same proposition is stated in slightly different ways four times under their points and authorities with the single citation of the *Little Beaver Special Drainage District* case each time. The rule is correctly stated but has no application here. There was no testimony by the engineer, or any other witness, as to the extent of the Federal contribution. An objection was made when a question was asked on redirect examination as to one phase of the project which was to be constructed by the government. After overruling the objection a further colloquy took place, most of it in chambers, the court reconsidered, and the witness did not testify on this subject. Defendants opened this line of questioning on cross-examination and should not complain. Furthermore, the extent of the government's participation was included in the court's earlier order authorizing the improvements to be made and the assessment levied, which order went to the jury at the behest of defendants.

Defendants' complaint that while there is a crop surplus and the government is spending money to reduce and control crops, money is being here spent to produce more crops, may find many receptive ears. But we fail to see how this seeming paradox has any vitality in this proceeding.

Objection is made that the trial court refused to grant defendants' motion to withdraw a juror and declare a mistrial on the ground that the jurors were receiving information concerning the controversy through newspaper media. This error, if such it be, cannot now be raised since the point was not raised in the post-trial motion as required by statute. Ill. Rev. Stat. 1961, chap. 110, par. 68.1(2).

We proceed to objections to particular assessments. The Fineup-Biest tract contains 538 acres. The owners use it for duck hunting and fishing. There was evidence that if the land were cleared and the project built, it could be used for farming in summer and, after closing the drains, it could be flooded for duck hunting. We are of the opinion that the record shows the highest and best use of this land to be for duck hunting and that its value for that purpose will equal or exceed the value for agricultural purposes after the improvements. The assessment of a tract of land within a drainage district may not exceed the benefits to be derived by the tract from the improvements. (*Commissioners of McGee Creek Levee and Drain. Dist.* v. *Wabash Ry. Co.* 319 Ill. 379.) The assessment against this tract cannot be justified. It is conceded by these particular defendants that widening and strengthening the main levee (Main Stem River Levee) would result in a benefit. The only proof of the cost of the Main Stem levee is an average of $2 per acre over the whole district and the per acre assessment of this tract should be reduced to that amount. The annual benefit assessment should be reduced in the same proportion. What we have just said applies equally to the Fineup-Klushulte-Vancil tract consisting of 218 acres, all but 40 acres of which is covered by water, brush and timber. The assessment and annual benefit assessment must be similarly reduced.

The Gulf, Mobile & Ohio Railroad Company's 100-foot right of way extends 8 or 9 miles across the District and contains 176.35 acres. Its embankment varies from 6 to 20 feet in height. The commissioners considered the highest and best use to be for railroad purposes, but oddly enough assessed it at $15.22 to $45.00 per acre, the same rate as agricultural land.

In determining the principles to govern in these cases where there is a conflict in the evidence, this court turned to the solution adopted in condemnation actions. In *Crosby* v.

*DeLand Special Drainage Dist.* 367 Ill. 462, reference was made to drainage district condemnation procedure, and it was there said: "The same rule would apply to the findings of the jury and judgment of the county court upon the question of benefits." (p. 468.) This view was followed in *Union Drainage Dist.* v. *Hamilton,* 390 Ill. 487, 499: "In cases of this character, where the evidence is conflicting and the jury views the premises and the verdict is within the range of the testimony, the court will not interfere with the finding of the jury as to the amount of benefits, unless there is something in the record showing that the jury was influenced by passion or prejudice or that there have been incorrect rulings by which the jury might have been misled." There was evidence of benefits to the railroad, and an admission by its only witness that in the event of a very high flood it would probably be benefited, although the amount was unspecified. Under such circumstances the judgment will not be disturbed.

The remaining specific objections need not be here considered in detail since the evidence was in conflict. Actually, several defendants raised questions as to damages to land not taken in the eminent domain feature of these proceedings. They apparently seek damages on the same evidence in both the assessment and eminent domain phases of this case. For example, Selma and Hulda Meyer are the owners of 155 acres divided into separate tracts ¼ mile apart. They contended that they were not benefited since their land would be cut into 4 parcels with poor access from one to the other. The court sustained the jury award of $18,000 as damages to land not taken and the benefit assessment of $2272.85 will be set off against that amount thereby leaving excess damages over benefits of $15,727.15. Dorothy S. Meyer was awarded $10,000 for damages to land not taken, assessed benefits of $1287, leaving $8713.74, exclusive of the award for land taken.

With the exception of a criticized instruction, each of

the condemnation cases is based on the respective defendant's contention that the amount of damages awarded by the jury is too low. The evidence as to compensation for land taken and damages to land not taken is conflicting, but the verdicts were well within the range of the evidence. The jury viewed the premises. There is no contention that the jury was influenced by passion or prejudice, nor are incorrect rulings charged by which the jury might have been misled (with the exception of a refused instruction by the Fausek family which will be discussed later.) Under such circumstances we have consistently held that the courts will not interfere with the findings of the jury. (*DeLand Special Drainage Dist.* v. *Warner*, 348 Ill. 376; *Department of Pub. Works and Bldgs.* v. *Dust*, 24 Ill.2d 119; *Trustees of Schools* v. *Schroeder*, 23 Ill.2d 74; *Waukegan Park Dist.* v. *First Nat. Bank of Lake Forest*, 22 Ill.2d 232.) These condemnation awards will not be disturbed.

Members of the Fausek family owned a total of 938 acres in the Sny District, 292 were owned by Frank and James Fausek, 246 by E. W. and Clara Belle Fausek and 400 stand in the name of Mercantile Trust Co. as trustee, and Jean Carter. It is known as the A. J. Fausek Estate land. All of it has been farmed as a unit for many years. Petitioner presented its evidence on the question of compensation for land taken and damages to land not taken separately as to the two tracts from which land was actually taken rather than the whole. The Fausek defendants presented their case on the theory that since 498 of the 538 acres had been farmed with the Estate 400 acres, that the Estate was entitled to damages to land not taken, even though no part of its land was taken. Their instruction No. 29, which was a form of verdict, was refused by the court. Defendants made a general objection in their post-trial motion to "every instruction that was tendered by the objectors and refused by the court". The motion should specify the grounds why the refusal (or giving) of the

instruction was error, and if the party fails to do so he waives the right of review. (Cf. *Goodman* v. *Motor Products Corp.* 22 Ill. App. 2d 378.) Accordingly, we do not reach the question of whether the refusal of the tendered instruction was error.

The judgments of the county court of Pike County are affirmed except as to the Fineup-Biest and Fineup-Klu-shulte-Vancil assessment judgments, and as to them the judgment is reversed and the cause remanded with directions to proceed in accordance with the views herein expressed.

*Affirmed in part; and reversed in part and remanded, with directions.*