(No. 28252.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
ROCKFORD SILVER PLATE COMPANY *et. al.*—(JOSEPH
OLSON, Appellee.)

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 16, 1945.*

MAX A. WESTON, State's Attorney, and WILLIAM H. GATES, both of Rockford, for appellant.

KARL J. MOHR, of Rockford, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks reversal of a decree of the circuit court of Winnebago county directing the county treasurer and *ex-officio* county collector, as receiver under an order of that court, to pay certain monies, collected by him as such receiver, to certain parties, of whom appellee was one. The facts are stipulated and they are these. On July 22, 1939, the Rockford Silver Plate Company owned certain real estate in Winnebago county, known in this record as "Tract 1," subject to a certain mortgage to one Henrik A. Fredriksen. On that date a suit to foreclose this mortgage was filed and a receiver was appointed to collect the rents and to apply the same to the payment of the mortgage debt. On November 3 following, complaint was filed in the suit before us by the State's Attorney on behalf of the People, to foreclose delinquent general taxes and special assessments on this property, which had accumulated for some years. On December 30 following, the county treasurer and *ex-officio* county collector of Winnebago county was appointed only receiver in the tax foreclosure case, and the receiver in the mortgage proceeding was required to turn over the matters of receivership to the tax receiver. On May 24, 1940, a decree for sale of the property, subject to the unpaid taxes and special assessments, was entered in the mortgage foreclosure proceeding, and on July 29 following, report of sale showed the property sold to one Howard Thomas for $2559.94, subject to taxes and special assessments. On November 3, 1940, a decree for deficiency was entered in favor of certain noteholders or their assignees, for large sums of money. The period of redemption from the mortgage foreclosure sale expired on October 8, 1941. A master's deed was thereafter issued

to one A. R. Munson. The following also took place in the tax foreclosure proceeding: On November 25, 1941, one week after the issuance of the master's deed to Munson, a decree for foreclosure of the lien of general taxes in a sum in excess of $15,000, and special assessments in excess of $39,000, was entered against the property, and on February 17, 1942, the property was sold to one Weingartner for $19,000. On February 24, 1942, an order was entered approving the sale, finding a deficiency, and continuing the tax receiver. The court retained jurisdiction of the cause. On June 19, 1942, the property was redeemed by Mercantile Parking, Inc., and on June 22 of that year the receiver was ordered to surrender possession. It also appears from the record that Munson, the holder of the deed from the master, had deeded Tract 1 to the Illinois National Bank and Trust Company of Rockford, which, on May 27, 1942, deeded the property to Mercantile Parking, Inc., who, as noted, redeemed from the tax foreclosure sale.

During the period between the filing of the mortgage foreclosure and the date of the redemption by Mercantile Parking, Inc., there was accumulated in the hands of the tax receiver the sum of $3100, derived from the rents of the premises, $1700 of which was collected prior to the time of the entry of the decree for foreclosure in the tax case on November 25, 1941. By the date of the sale on February 17, 1942, he had collected a total of $2300, $800 being thereafter collected during the time the property was in his hands after the sale and prior to redemption on June 19, 1942. No application of accumulated rents to either the taxes or the mortgage was made or attempted from June 22, 1942, when the tax receiver was ordered to surrender possession, until April 24, 1944, when the appellee, Olson, assignee of various deficiency claims in the mortgage foreclosure proceeding, filed a petition in the tax foreclosure proceedings, alleging the facts as herein-

before stated and praying that the county treasurer be required to pay to the respective holders of deficiency decrees in the mortgage foreclosure the $3100 he had collected while acting as receiver in the tax foreclosure. To this petition the People filed an answer setting out the proceeding in the tax foreclosure suit and alleging that the petitioner, Olson, had no interest in the money held by the county treasurer as receiver. The answer sought, as affirmative relief, an order directing the tax receiver to apply the $3100 to the general taxes and special assessments.

It appears, also, that on November 6, 1941, the receiver in the foreclosure proceeding reported to the court that he had $1600, which he had collected from the rents on the property, and asked that he be authorized to apply it on the tax lien. No order was entered in that matter and neither in the decree for foreclosure and sale, nor in the order approving report of sale and finding deficiency, were any of the funds accumulated by the receiver applied to the lien for the taxes and special assessments, but, on the other hand, the decree for foreclosure was for the full amount of the taxes and special assessments, amounting to $55,533.21. The deficiency entered was for that amount less the $19,000 represented by the sale to Weingartner. The question in this case is whether the holders of the deficiency judgments in the mortgage foreclosure case, or the taxing bodies of Winnebago county, are entitled to all or part of the $3100 collected from rents.

It is first contended by appellant that appellee, Olson, intervened in this case without an order of court permitting him to do so, and therefore has no standing as a party litigant. It is sufficient answer to that contention to say that the point was not raised in the trial court and it may not be raised for the first time here.

It is also argued that under sections 216 and 216a of the Revenue Act, as they then read, (Ill. Rev. Stat. 1941,

chap. 120, pars. 697, 697a, p. 2711,) the county treasurer, as only receiver in the tax foreclosure case, having collected the rents, they should be applied to the deficiency in that cause. Section 216, so far as applicable here, provides as follows: "The taxes upon real property, together with all penalties, interests and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and incumbrances, from and including the first day of April in the year in which the taxes are levied until the same are paid; which lien may be foreclosed in equity in any court of competent jurisdiction in the name of the People of the State of Illinois, whenever the taxes for two or more years, upon the same description of property, shall have been forfeited to the State, and may be sold under the order of the court by the person having authority to receive State and County taxes, * * *. The process, practice and procedure under this Act shall be the same as provided in an Act entitled 'An Act in relation to practice and procedure in the courts of this State,' approved June 23, 1933, except that receivers may be appointed on not less than three days' written notice to owners of record or persons in possession. In all such petitions the court shall have power to appoint the county collector only receiver to take possession of the real estate for the purpose of collecting the rents, issues and profits therefrom, and to apply the same in satisfaction of the tax lien. * * * In proceedings to foreclose the tax lien on any real property, or in petitions to enforce the same, the amount due on the collector's books against the said property shall be prima facie evidence of the amount of taxes against the said real property. When any taxes are collected in either of such proceedings, they shall be paid to the county collector, to be distributed by him to the respective authorities entitled thereto."

Section 216a of the act provides that "During the pendency of any tax foreclosure proceeding and until the time

shall expire to redeem the premises sold, or redemption shall be made, from any sale that may be made under any decree foreclosing the lien of taxes, no waste shall be committed or suffered on any of the premises involved therein but the premises shall be maintained in good condition and repair. In order to prevent waste and to maintain the premises in good condition and repair, or when in the judgment of the court it is to the best interest of the parties, the court, upon the verified petition of any party to said proceeding, or the holder of the certificate of purchase, may appoint a receiver for the premises with like powers and duties of receivers in chancery as in cases of foreclosure of mortgage and trust deeds. In lieu of appointing a receiver, the court in its discretion, may take such other action as may be necessary or desirable to prevent waste and maintain the premises in good condition and repair."

Revenue laws should be given liberal and reasonable construction, but in cases of doubt they must be construed strictly against the government and may not be extended by implication. *Peoples Gas Light and Coke Co.* v. *Ames,* 359 Ill. 152; *Majestic Household Utilities Corp.* v. *Stratton,* 353 Ill. 86.

It is appellee's position, in which he was sustained by the chancellor, that the power of the court to appoint a receiver in a tax foreclosure proceeding is limited in point of duration to the date of the sale of the property under foreclosure decree; that the lien for the taxes expires with the sale of the property, and, therefore, when the circuit court ordered the receiver to continue as such after sale, there was no lien for taxes in existence and, therefore, no power to appoint a receiver to collect rents to apply to such lien, as provided by the statute. Counsel for appellant, on the other hand, argue that this is like any other foreclosure proceeding in which the court is empowered to appoint a receiver, and if in this kind of case it does not have power to continue the receiver after the sale of the

property, yet, nevertheless, under section 216a such receiver might be appointed "during the pendency of any tax foreclosure proceeding and until the time shall expire to redeem the premises sold, or redemption shall be made." It is clear, however, that the provision of section 216a, for the appointment of a receiver during the period of redemption, applies only to the purpose of preventing waste, and is primarily for the benefit of the purchaser under the foreclosure sale. That section does not support the argument that the receivership referred to in that case may be treated as a receivership to collect the rents of the property and apply them on taxes, after foreclosure of the lien and sale of the property.

That foreclosure and sale of property under a tax lien foreclosure proceeding extinguishes the lien, is settled in this State. The cause of action is said to merge in the foreclosure and sale and all rights and liabilities growing out of the lien are transferred to the decree which becomes the basis of title. (*French* v. *Toman,* 375 Ill. 389.) While the lien for the State is paramount and superior to any other lien or property right, such lien is discharged by sale under foreclosure. (*City of Chicago* v. *Collin,* 302 Ill. 270.) The first clause of section 216 of the Revenue Act definitely limits the existence of liens for taxes until the same are paid. It is, therefore, clear that the tax lien is discharged by sale. It follows that the court had no authority to continue the receiver for the purposes of collecting rents to apply to the taxes, and that as to such funds collected after the sale of the property, the circuit court was correct in decreeing that they should be paid to the holders of the deficiency judgments under the mortgage foreclosure proceeding. As we have hereinbefore noted, a receiver was appointed in the mortgage foreclosure proceeding under provisions of the trust deed, specifically authorizing such an appointment for the period of redemption. While the tax receiver continued by the court

was not, after sale, authorized to collect rents to apply on the tax deficiency, such rents, both before and after the sale, were collected, and constituted funds in the hands of the court.

The next question concerns the disposition of the funds collected by the receiver. Prior to February 17, 1942, the date of the sale, the receiver had collected $2300, of which $1700 was collected prior to the decree of foreclosure, on November 25, 1941. There is no doubt that the court might have applied such rents to the reduction of the taxes and special assessments, since the lien existed until that sale. While a petition was filed, as we have noted, asking authority to pay over the $1600 collected to the taxing bodies, yet no action was taken on that petition. At the time the decree for foreclosure was entered and the amount of taxes and special assessments found due, no consideration was given to any funds collected, and no reduction from those amounts was entered. The decree was entered for the full amounts of taxes and special assessments due. So also at the time of the entering of the deficiency judgment, no order of the court was entered applying to the taxes any funds collected. The lien of the taxes had, as we have pointed out, expired with the sale.

The question, therefore, is whether the court properly ordered the funds paid on the deficiency decree entered in the mortgage foreclosure. The receiver, acting as such under the tax lien foreclosure, properly collected the rents under that lien until it was extinguished by the sale had under the tax lien foreclosure decree. That sale took place on February 17, 1942. Up to that time the receiver had collected $2300. While the court should have applied these funds toward the payment of the tax lien, the fact that it did not do so did not change the character of the funds collected. They were collected for application to the tax lien. A large deficiency remained after the sale and, the court having the funds in its hands, the duty to apply

them to the payment of the taxes remained, and it was error to refuse to so apply them.

Concerning the balance of $800 collected after the February 17, 1942, sale a different situation exists. The receiver had no longer the right to collect rents for application to the tax lien. That lien had been extinguished. The court had those funds in its hands at the time the petition herein was filed, and it properly ordered them applied to the deficiency existing in the mortgage foreclosure proceeding.

The decree is affirmed as to the $800 and reversed as to the $2300, and the cause is remanded, with directions to order the latter sum paid to appellant, petitioner-appellee to pay three fourths of the costs in this court and appellant to pay one fourth.

> *Affirmed in part, and reversed in part and remanded, with directions.*