THE AMERICAN NATIONAL BANK IN DE KALB, Plaintiff and Counter-defendant-Appellee, v. ARTHUR RICHOZ *et al.*, Defendants and Counter-plaintiffs-Appellants (Wayne Miller *et al.*, Defendants).

Second District   No. 2—88—1111·

Opinion filed October 2, 1989.—Rehearing denied November 8, 1989.

Vincent C. Argento, of Law Offices of Vincent C. Argento, of Elgin, for appellants.

John W. Countryman and Susan Niki Willott, both of Countryman, Rissman & Krasner, of De Kalb, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendants, Arthur and Joan Richoz, appeal from an order of the trial court which granted summary judgment in favor of plaintiff, the

American National Bank in De Kalb. Defendants also appeal from an order which dismissed their counterclaim against plaintiff. On appeal, defendants contend that (1) based on the affirmative defense of either impossibility or commercial frustration, they established a genuine issue of material fact which precluded summary judgment; and (2) the trial court improperly dismissed their counterclaim on the basis that they lacked standing.

As the parties are well familiar with the facts of this case, we shall recite only those facts which are essential to the disposition of the issues raised on appeal. This case involves the execution of four notes by defendants, Arthur and Joan Richoz, Wayne Miller, and Joseph Beck, in favor of plaintiff. Miller and Beck were engaged in a restaurant business with an adjoining health club operation, Olympic Health and Racquet Club (Olympic), which were organized as two separate corporations. Miller and Beck set up Fitness II Enterprises, Inc. (Fitness II), to operate Olympic, and plaintiff provided the initial financing for the setup of Fitness II. After experiencing some financial hardships, Miller and Beck sought additional investors and convinced Arthur and Joan Richoz to purchase stock in Fitness II.

Miller and Arthur Richoz went to plaintiff to discuss additional loans and were told, through its president, Richard Willey, that plaintiff was unwilling to put additional funds into Fitness II because it had previously provided substantial financing for Olympic's operation. Plaintiff stated that it would only loan funds on the basis of the personal credit of Arthur and Joan Richoz. Arthur Richoz indicated that because Miller and Beck were also involved in the operations, he wanted them obligated on the notes. Arthur and Joan Richoz executed four notes as principal obligors, and Miller and Beck signed those notes personally, not in a corporate capacity. Soon after the notes were executed, Fitness II experienced further financial difficulties and fell farther behind on its corporate obligations to plaintiff which included the notes at issue in this case. Even though several meetings of all the investors were conducted, Fitness II failed to make payments on its corporate obligations to plaintiff. Plaintiff then presented final deadlines to all the parties which the stockholders and corporation failed to meet. On April 6, 1986, defendants entered into an agreement for the sale of Olympic for $130,000 to Tim Raines, a representative of Vinra Associates. On June 11, 1986, when plaintiff believed that certain unauthorized individuals were in possession of Olympic, it entered the premises and changed the locks to the health club. As a result of plaintiff's action, the sale of Olympic to Vinra Associates was not completed. Eventually, plaintiff sold Olympic for $45,000.

A notice of default was given on the personal obligations of defendants Arthur and Joan Richoz, and defendants refinanced some investment property to pay approximately $60,000 on their obligations. Plaintiff then set off certain bank accounts of defendants to further reduce defendants' indebtedness, but defendants were still unable to meet their obligations on the notes. On January 6, 1987, plaintiff brought suit to recover $28,612.84 due on four notes defendants personally executed. Although Miller and Beck were named defendants in that complaint, this appeal concerns only the claims made against Arthur and Joan Richoz.

In their answer to plaintiff's complaint, defendants raised the affirmative defense of impossibility based on plaintiff's conduct of changing Olympic's locks. Additionally, defendants filed a counterclaim which alleged that plaintiff intentionally interfered with the contractual relationship between defendants and Vinra Associates. Plaintiff filed a motion to dismiss the counterclaim, and the trial court granted plaintiff's motion, finding that defendants lacked standing to bring their counterclaim. Plaintiff then filed a motion for summary judgment which was granted. From the entry of summary judgment in plaintiff's favor, defendants filed a timely notice of appeal.

In their first appellate contention, defendants assert that the trial court improperly granted plaintiff's motion for summary judgment because they raised a factual question with respect to whether plaintiff made it impossible for defendants to honor their obligations under the four notes. Defendants claim that their performance was rendered impossible when plaintiff changed Olympic's locks thereby spoiling defendants' attempt to sell the health club to Vinra Associates.

■ A motion for summary judgment should be granted only when the pleadings, depositions, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Addison State Bank v. National Maintenance Management, Inc.* (1988), 174 Ill. App. 3d 857, 859.) In determining the existence of a genuine issue of material fact, we must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. *Purtill*, 111 Ill. 2d at 240.

■ It is well settled that where the parties, by their own conduct and positive undertaking, create a duty or charge upon themselves, they must abide by the contract and make the promise good, and subsequent contingencies not provided against in the contract, which ren-

der performance impossible, do not bring the contract to an end. (*Leonard v. Autocar Sales & Service Co.* (1945), 392 Ill. 182, 187; *Semrow v. Harmswood Stables North, Inc.* (1981), 100 Ill. App. 3d 219, 226; *Mouhelis v. Thomas* (1981), 95 Ill. App. 3d 181, 183.) An exception to this general rule is where the continued existence of a particular person or thing is so necessary to the performance of a contract that, by law, it is implied as a condition of the contract that the death of that person or destruction of that thing shall excuse performance. *Leonard*, 392 Ill. at 189; *Semrow*, 100 Ill. App. 3d at 226; *Mouhelis*, 95 Ill. App. 3d at 183.

■■ The subject matter of the contract at issue here was the funds loaned to defendants pursuant to the terms of plaintiff's notes. There has been no destruction of the subject matter of the contract between plaintiff and defendants. Although the Olympic health club may have been rendered useless to defendants because plaintiff locked them out, the health club was not an essential element of defendants' contract with plaintiff, and plaintiff's act of changing Olympic's locks does not excuse defendants' obligation to repay plaintiff's notes under the theory of impossibility.

■ A further extension of the affirmative defense of impossibility is the doctrine of commercial frustration. (See *Mouhelis*, 95 Ill. App. 3d at 183.) "The doctrine of frustration * * * rests on the view that where from the nature of the contract and the surrounding circumstances the parties when entering into the contract must have known that it could not be performed unless some particular condition or state of things would continue to exist, the parties must be deemed, when entering into the contract, to have made their bargain on the footing that such particular condition or state of things would continue to exist, and the contract therefore must be construed as subject to an implied condition that the parties shall be excused in case performance becomes impossible from such condition or state of things ceasing to exist." (*Leonard*, 392 Ill. at 187-88.) To obtain relief under the doctrine of commercial frustration, the defendant must demonstrate that: (1) the frustrating event was not reasonably foreseeable; and (2) the value of counterperformance has been totally or nearly totally destroyed by the frustrating event. (*Northern Illinois Gas Co. v. Energy Cooperative, Inc.* (1984), 122 Ill. App. 3d 940, 952; *Smith v. Roberts* (1977), 54 Ill. App. 3d 910, 913.) Although the doctrine of commercial frustration is a viable defense, it should not be applied liberally. *Smith*, 54 Ill. App. 3d at 913.

In their second appellate contention, defendants argue that under the doctrine of commercial frustration, it was clearly not foreseeable

that plaintiff would lock them out of their own business when plaintiff's purpose for lending them money was to keep their business going. Defendants further argue that the value of their counterperformance was destroyed when they were locked out of the Olympic health club.

■■ ■ Despite their assertions to the contrary, defendants have failed to allege facts which would satisfy the two-part test for the doctrine of commercial frustration. Although plaintiff's loans were given for the purpose of easing the financial difficulties which the Olympic was experiencing, it was foreseeable that, if defendants defaulted on those loans, plaintiff might seize and sell the health club to satisfy defendants' indebtedness. Undoubtedly, the sole purpose for plaintiff retaining a security interest in the Olympic was that in the event defendants defaulted on their obligations, plaintiff could recoup its losses by selling the health club. Because the record demonstrates that the frustrating event of which defendants complain was reasonably foreseeable, we conclude that the doctrine of commercial frustration is inapplicable to the instant action. There being no genuine issue of a material fact, the trial court properly granted summary judgment in plaintiff's favor.

Defendants next contend that, based on an assignment contract in which Fitness II assigned to them its rights in a cause of action against plaintiff for intentional interference with a contractual relationship, they had standing to sue plaintiff. Alternatively, defendants contend that they had standing to bring a derivative action on behalf of Fitness II.

■■ Initially, we note that defendants have failed to attach to their counterclaim a copy of Fitness II's alleged assignment contract; nor does the alleged assignment contract appear anywhere in the record. The record indicates that Fitness II was dissolved on September 2, 1986, for failure to file an annual report and/or failure to pay franchise taxes. There is no evidence which tends to show that defendants were assigned Fitness II's cause of action prior to the dissolution of that corporation. Because there is no authority for a dissolved corporation to assign a cause of action (see Ill. Rev. Stat. 1987, ch. 32, par. 12.30; *People v. Boyce* (1987), 156 Ill. App. 3d 1036, 1039; *Blankenship v. Demmler Manufacturing Co.* (1980), 89 Ill. App. 3d 569, 572) and because defendants have failed to affirmatively demonstrate that they entered into the alleged assignment contract prior to the dissolution of Fitness II, we consider Fitness II's alleged assignment to defendants to be an inadequate basis for conferring standing upon defendants.

■■■ We next decide whether defendants had standing to bring a

derivative action against plaintiff. Ordinarily, a shareholder cannot maintain a derivative action on a corporate right where the shareholder has failed to demand that the corporation's directors bring suit. (*Valiquet v. First Federal Savings & Loan Association* (1979), 87 Ill. App. 3d 195, 199.) A shareholder's demand is excused where the majority of the directors are themselves involved in the matters complained of, such that it is evident that the demand would be unavailing. (*Valiquet*, 87 Ill. App. 3d at 200.) To maintain a suit on behalf of a corporation, a shareholder must allege and prove an equitable basis for such intervention, and a shareholder is no more entitled to challenge a decision by the directors not to sue through a derivative action than to so challenge any other board decision. (*Axelrod v. Giambalvo* (1984), 129 Ill. App. 3d 512, 520.) There is no allegation in defendants' counterclaim or in the record that defendants demanded that Fitness II's directors bring suit against plaintiff for the intentional interference of a contractual relationship. In the absence of such demand, we conclude that defendants lacked standing to sue plaintiff in a derivative action. Therefore, the trial court properly dismissed defendants' counterclaim.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

NASH and DUNN, JJ., concur.