FARM CREDIT BANK OF ST. LOUIS, as Successor in Interest to Federal
Land Bank of St. Louis, Plaintiff-Appellee, v. CHARLES L. DORR *et al.*,
Defendants-Appellants (Bobbi J. Dorr *et al.*, Defendants).

Fifth District   No. 5—92—0031

Opinion filed September 9, 1993.

Jerold W. Barringer, P.C., of Carlinville (Jerold W. Barringer, of counsel), for appellants.

Terry Sharp, of Law Office of Terry Sharp, P.C., of Mt. Vernon, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

This is a mortgage foreclosure action brought by the Farm Credit Bank of St. Louis, as successor in interest to the Federal Land Bank of St. Louis, on a note and mortgage dated January 29, 1982. Defendants appeal from the order of foreclosure and from the court's order which struck their affirmative defenses. We affirm.

■ The first issue on appeal is whether the trial court erred in allowing the Farm Credit Bank of St. Louis (Farm Credit Bank) to proceed as successor in interest to the Federal Land Bank of St. Louis (Federal Land Bank). Defendants claim that the Farm Credit Bank offered no proof that it is the legal owner and holder of the note and mortgage at issue and that without such proof the Farm Credit Bank was without authority to proceed with the foreclosure action. Farm Credit Bank argues that the issue is not properly before the court as it was not raised in the trial court and that proof was offered from which the circuit court could properly determine that the Farm Credit Bank was the holder and owner of the note and mortgage.

Defendants contest Farm Credit Bank's assertion that they waived the issue below. However, defendants fail to support their contention that they objected in the trial court to the substitution of Farm Credit Bank as a party plaintiff. Defendants argue that it could not be determined until trial whether the Farm Credit Bank was the holder and owner of the note and mortgage and that absent the plaintiff's proof of such status defendants cannot be said to have waived an objection on appeal. We disagree.

The Federal Land Bank filed its complaint on June 23, 1987. On January 23, 1989, counsel for Farm Credit Bank filed a motion for substitution of counsel. The motion stated that Farm Credit Bank was a successor in interest to the Federal Land Bank. Counsel for the Farm Credit Bank requested permission for his law firm to continue to prosecute the foreclosure on behalf of and in substitution for the Federal Land Bank's counsel. According to the record, defendants did not object, and the trial court granted the motion for substitution of counsel. From that point on, the caption on the pleadings in the record read, "Farm Credit Bank of St. Louis, as successor in interest to Federal Land Bank of St. Louis." Moreover, the Farm Credit Bank prosecuted this foreclosure action, and it is undisputed that it has at all times relevant to this action been in possession of the note and mortgage. In any event, defendants' objection was not presented to and ruled on by the trial court, and it may not be raised for the first time here. See *People v. Rockford Silver Plate Co.* (1944), 388 Ill. 534, 58 N.E.2d 599; *First National Bank & Trust Co. v. Maas* (1975), 26 Ill. App. 3d 733, 327 N.E.2d 205; *Rasmussen v. Village of Bensenville* (1965), 56 Ill. App. 2d 119, 205 N.E.2d 631.

Turning to the next issue, defendants contend that the trial court erred in striking their fourth, fifth, and sixth affirmative defenses.

Defendants maintain that had the court not stricken those defenses, they would have prevailed in the foreclosure action.

Defendants' fourth affirmative defense alleges that plaintiff failed to comply with the 1985 amendments to the Farm Credit Act of 1971, which required it to stay the foreclosure proceedings pending notification to the mortgagors that plaintiff was required to consider them for restructuring. (See 12 U.S.C. §2001 *et seq.* (1988).) Defendants' fifth affirmative defense alleges plaintiff failed to comply with the Food Security Act of 1985, which amended the Farm Credit Act of 1971 and required plaintiff to notify defendants of the procedures to pursue to qualify for rights under the Food Security Act of 1985. (See Farm Credit Amendments Act of 1985, Pub. L. No. 99–205, 99 Stat. 1678 (Dec. 23, 1985).) The sixth affirmative defense alleges the plaintiff failed to comply with the 1987 amendments to the Farm Credit Act of 1971, which required it to stay foreclosure until defendants had a fair opportunity to apply for a reduction of indebtedness or restructuring. See Agricultural Credit Act of 1987, 12 U.S.C. §2202(a) (1988).

The trial court granted plaintiff's motion for summary judgment as to these affirmative defenses but gave no reason for its decision. Defendants claim that the trial court's decision is based on the premise that no private cause of action exists under the Farm Credit Act of 1971 or its amendments. Although we cannot determine the basis of the trial court's ruling, the parties' arguments focus on whether defendants may assert a private cause of action.

Plaintiff contends that defendants cannot assert claims based upon a denial of rights under the Farm Credit Act of 1971 or its amendments, regardless of whether said claims are made as part of a complaint or are pled as affirmative defenses. We agree.

█ █ It is undisputed that the Farm Credit Act contains no express provision conferring upon individuals a cause of action to enforce the provisions of the Act. Yet, courts have held that a statute which fails to expressly provide a private right of action can nevertheless create an implied private right of action if a private right of action is necessary to effectuate the purpose of the statute. (*Smith v. Russellville Production Credit Association* (11th Cir. 1985), 777 F.2d 1544, 1547.) In *Cort v. Ash* (1975), 422 U.S. 66, 45 L. Ed. 2d 26, 95 S. Ct. 2080, the Supreme Court set forth four factors to consider when determining whether a statute creates an implied right of action.

> "First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' [citation]—that is, does the statute

create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? [Citation.] Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Citations.] And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" (Emphasis in original.) (422 U.S. at 78, 45 L. Ed. 2d at 36, 95 S. Ct. at 2088.)

In analyzing these factors, the ultimate inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. (*Touche Ross & Co. v. Redington* (1979), 442 U.S. 560, 575, 61 L. Ed. 2d 82, 95, 99 S. Ct. 2479, 2489.) Unless congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist. *Saltzman v. Farm Credit Services of Mid-America, A C A* (7th Cir. 1991), 950 F.2d 466, 468.

In *Harper v. Federal Land Bank* (9th Cir. 1989), 878 F.2d 1172, the court conducted an in-depth analysis of the Farm Credit Act and delved into legislative history to discern its purpose and the legislature's intent. As for the first prong of the *Cort* analysis, namely, whether defendants are among those for whose special benefit the statute was enacted, the *Harper* court concluded that while one of the purposes of the Act was to provide borrowers with certain limited rights, the Act's overall purpose was to reassure both farmers and financial markets that the Farm Credit System would remain a viable entity. (See also *Walker v. Federal Land Bank* (C.D. Ill. 1989), 726 F. Supp. 211 (in which the court held that Congress carefully drafted the Act in order to achieve two opposing goals: to shore up the financial structure of the Farm Credit System and to benefit financially strapped farmers).) Whatever the reason for the Act, it is clear that the second *Cort* factor, the presence of congressional intent to create a private remedy, simply does not exist. See *Thompson v. Thompson* (1988), 484 U.S. 174, 179, 98 L. Ed. 2d 512, 519-20, 108 S. Ct. 513, 516.

*Harper* pointed out that an express private right of action was proposed in both houses of Congress but deleted in the final conference version. The conference committee's report stating that the committee deleted the private right of action provision " 'represents the final statement of the terms agreed to by both houses.' " (*Harper*, 878 F.2d at 1176, quoting *Demby v. Schweiker* (D.C. Cir. 1981), 671

F.2d 507, 510; *Zajac v. Federal Land Bank* (8th Cir. 1990), 909 F.2d 1181, 1182.) Given the deletion of the private-right-of-action provision and the fact that the Act provides for administrative remedies, *Harper* concluded that Congress intended administrative review to be the exclusive remedy of the borrower. *Harper*, 878 F.2d at 1176; see also *Zajac*, 909 F.2d at 1183, quoting *Massachusetts Mutual Life Insurance Co. v. Russell* (1985), 473 U.S. 134, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (wherein the court stated, "[T]he presumption that a private remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement").

Courts in addition to *Harper* have concluded that allowing a private right of action under the Act would undermine the objectives of the Farm Credit System and would be inconsistent with congressional intent not to confer a private right of action. (See *Saltzman v. Farm Credit Services of Mid-America, A C A* (7th Cir. 1991), 950 F.2d 466; *Zajac v. Federal Land Bank* (8th Cir. 1990), 909 F.2d 1181; *Griffin v. Federal Land Bank* (10th Cir. 1990), 902 F.2d 22; *Harper v. Federal Land Bank* (9th Cir. 1989), 878 F.2d 1172; *Redd v. Federal Land Bank* (8th Cir. 1988), 851 F.2d 219; *Schroder v. Volcker* (10th Cir. 1988), 864 F.2d 97; *Mendel v. Production Credit Association* (8th Cir. 1988), 862 F.2d 180; *Bowling v. Block* (6th Cir. 1986), 785 F.2d 556; *Smith v. Russellville Production Credit Association* (11th Cir. 1985), 777 F.2d 1544; *Walker v. Federal Land Bank* (C.D. Ill. 1989), 726 F. Supp. 211; *Aberdeen Production Credit Association v. Jarrett Ranches, Inc.* (D.S.D. 1986), 638 F. Supp. 534.) We agree that the Farm Credit Act does not expressly create a private right of action, and there is no support for the conclusion that Congress intended to create a private right of action under the Act. Therefore, we hold that the trial court did not err in striking defendants' affirmative defenses.

On its face the decision of the trial court is the result of a summary judgment proceeding. A review of the record, however, reveals that in reality the parties and the court dealt with the issue regarding the propriety of the affirmative defenses as if the issue were raised in a motion to dismiss under section 2—615 (735 ILCS 5/2—615 (West 1992)). Instead of ruling that there was no material issue of fact to be tried, the court struck defendants' affirmative defenses on the basis that defendants have no legal right to raise these particular affirmative defenses.

A motion to dismiss tests the sufficiency of pleadings, whereas a motion for summary judgment seeks to determine whether there are

any material issues of fact to be tried. (*Barber-Colman Co. v. A & K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1070, 603 N.E.2d 1215, 1220; *Morrey v. Kinetic Services, Inc.* (1985), 133 Ill. App. 3d 1002, 1004, 479 N.E.2d 953, 954, citing *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.) It is apparent that the parties and the trial court combined an inquiry into whether defendants' pleadings were sufficient to state a valid affirmative defense with an examination which assumed that a cause of action had been stated. Such a proceeding is both confusing and deserving of disapproval. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E:2d 605.) As the proceedings below and the arguments on appeal were actually conducive to a motion to dismiss, we affirm the decision of the trial court striking defendants' fourth, fifth, and sixth affirmative defenses.

The next issue raised by the defendants is whether the trial court erred in granting summary judgment striking the defendants' tenth affirmative defense. Defendants' tenth affirmative defense provides in pertinent part as follows:

"1. At the beginning of the loan presently under foreclosure, the Plaintiff represented to the Defendants that the Defendants would have sufficient income and sufficient cash-flow to take care of the Federal Land Bank obligations, as well as the obligations of all other creditors.

2. This statement was made in December, 1981 or in January, 1982, by the loan officer in charge of the loan at that time, to induce the Defendants to proceed with the completion of the loan package.

3. Since that time, the government has specifically and directly altered the ability of the Defendants to repay the loans by adopting a pricing, subsidy and trade policy that directly reduces the Defendants' potential income each and every year, and which makes it impossible for the Defendants to repay their loans to the Plaintiff.

4. This process by the government is directly in violation of 15 U.S.C. §1022c(C) and Article I, Sec. VIII, which provide the authority and mandate of first the Congress, and then the President with the recommendation of Congress to regulate the economy in a manner which would have created this impossibility.

5. Further, the Plaintiff failed to inform the Defendants that it had specifically altered the way it calculates interest to the borrowers, and the percentage of overage or spread it deems

necessary between the cost of money and the charge to its borrowers, which has significantly increased the costs to the Defendants and which makes it impossible for the Defendants to repay their loans to the Plaintiff.

6. Each of these actions, whether individually or in conjunction with the other, has made it an absolute impossibility for the Defendants to perform on their obligations, and these actions are all outside the control of the Defendants and without their agreement, and thereby require this Court stay or dismiss this action until the circumstances change which provide an opportunity for the Defendants to perform on their obligations."

Defendants submitted two affidavits, loan documentation, and other materials to support the allegations of their tenth affirmative defense. Defendants argued at the hearing on the motion for summary judgment that the documentation submitted in support of its tenth affirmative defense consisted of congressional records, studies presented to Congress, and other information which showed that Congress and the President, through their policy decisions, have chosen to eliminate farmers and have in effect intervened in the economic market so as to render it impossible for the defendants to perform on their loan obligations. After a hearing on the motion for summary judgment, the court issued the following decision from the bench:

"Well *** I guess what you want this Court to do is to second-guess the President and the Congress and play Monday morning quarterback. But I don't think that's an affirmative defense. You have made your argument. You have made your record. If I was to allow this affirmative defense to stand, then every time there is a mortgage foreclosure, somebody is going to be in this courtroom saying well, the economy is not what I expected it to be when I took out this loan and that's because the President and the Congress messed up in their decision making process and because of that I shouldn't be held to answer to this mortgage, and I just don't think that's an affirmative defense that should be allowed to stand in this court.

*** But if I am allowing this affirmative defense, I'm going to allow everybody who ever had a mortgage to come in and say, well, the economy has gone down and it's the President's fault and it's Congress's fault and because of that, they should have made different decisions. If they would have made different decisions, I still could have made the payments, and you

shouldn't foreclose my mortgage. And I don't think that's an affirmative defense.

So the motion for summary judgment as to the 10th affirmative defense will be granted. That affirmative defense will be stricken."

Defendants argue that the court erred in granting plaintiff's motion for summary judgment because plaintiff submitted no facts to support its position. The purpose of a summary judgment proceeding is to determine whether there are any genuine issues of material fact, and the evidence is to be strictly construed against the moving party. (*Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, 10, 580 N.E.2d 655, 662.) Nonetheless, where the record only presents a question of law, a trial court may properly grant a motion for summary judgment. (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6, 570 N.E.2d 315, 317.) It is undisputed that the trial court based its decision granting plaintiff's motion for summary judgment on the conclusion that defendants presented no genuine issue of material fact to support a legally cognizable impossibility-of-performance defense in this foreclosure action.

As a general rule, where the parties to a contract, by their own conduct and positive undertaking, create a duty or charge upon themselves, they must abide by the contract and make the promise good, and subsequent contingencies not provided against in the contract, which render performance impossible, do not bring the contract to an end. (*Leonard v. Autocar Sales & Service Co.* (1945), 392 Ill. 182, 187, 64 N.E.2d 477, 479.) An exception to this rule is where the continued existence of a particular thing is so necessary to the performance of a contract that, by law, it is implied as a condition of the contract that the destruction of that thing shall excuse performance. *Leonard*, 392 Ill. at 189, 64 N.E.2d at 480; *American National Bank v. Richoz* (1989), 189 Ill. App. 3d 775, 780, 545 N.E.2d 550, 553.

In this case defendants argue that the government's economic policies, and the Farm Credit Bank's subsequent actions in light of those policies, interfered with interest calculations so as to render defendants' performance on their loan obligations impossible. Defendants' argument is tantamont to the theory, under the doctrine of commercial frustration, that the continued existence of a stable economic environment and, hence, interest rates, was an implied condition necessary to the performance of the contract between the parties. We disagree.

It is uncontroverted that the foreclosed-upon loan was a variable-rate loan. Consequently, defendants knew that the interest rate was subject to periodic change. The note in issue provides:

"FOR VALUE RECEIVED, the undersigned *** promises to pay *** the principal sum of $271,600.00 *** with interest on the whole amount of said principal sum remaining from time to time unpaid, at the rate of 12¾ per centum per annum or at said bank's option at such other rate applicable to this class of loan as may be subsequently adopted by said bank all in accordance with the Farm Credit Act of 1971 ***."

The prior relevant statute referred to in the note was 12 U.S.C. §2015, which provided that Federal Land Bank loans:

"shall bear interest at a rate or rates, and on such terms and conditions, as may be determined by the board of directors of the bank from time to time, with the approval of the Farm Credit Administration *** the loan documents may provide for the interest rate or rates to vary from time to time during the repayment period of the loan, in accordance with the rate or rates currently being charged by the bank."

The Agricultural Credit Act of 1987 revised the above provision and renumbered it as 12 U.S.C. §2016 (1988):

"(a) In general.

Loans and discounts made by a Farm Credit Bank shall bear such rate or rates of interest or discount, and be on such terms and conditions, as may be determined by the board of directors of the bank from time to time. ***

(b) Setting rates and charges.

In setting rates and charges, it shall be the objective to provide the types of credit needed by eligible borrowers at the lowest reasonable costs on a sound business basis taking into consideration the cost of money to the bank, necessary reserve and expenses of the bank and associations, and providing services to members. The loan documents or discounting and financing agreements, [sic] may provide for the interest rate or rates to vary from time to time during the repayment period of the loan or agreement."

In *Northern Illinois Gas Co. v. Energy Cooperative, Inc.* (1984), 122 Ill. App. 3d 940, 461 N.E.2d 1049, the court made the following observation:

"[T]he only certainty of the market is that prices will change. Changing and shifting markets and prices from multitudinous causes is endemic to the economy in which we live. Market

forecasts by supposed experts are sometimes right, often wrong, and usually mixed. If changed prices, standing alone, constitute a frustrating event sufficient to excuse performance of a contract, then the law binding contractual parties to their agreements is no more." (*Northern Illinois Gas Co. v. Energy Cooperative, Inc.* (1984), 122 Ill. App. 3d 940, 952, 461 N.E.2d 1049, 1059.)

Given that the loan in this case was a variable-rate loan, the parties were on notice that the interest rate could fluctuate, and we cannot insert stable interest rates as an implied condition of the loan agreement.

While the defense of commercial frustration is a viable doctrine in Illinois, it will be applied only when the defendant has satisfied two rigorous tests: (1) the frustrating event was not reasonably foreseeable; and (2) the value of the counterperformance had been totally or nearly totally destroyed by the frustrating cause. (*Smith v. Roberts* (1977), 54 Ill. App. 3d 910, 913, 370 N.E.2d 271, 273.) As set forth above, defendants failed to submit proof that the purported frustrating event was not reasonably foreseeable. Summary judgment is properly rendered when the pleadings, depositions, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) In light of the foregoing we cannot find that the trial court abused its discretion in holding that the defense of commercial frustration was not available to defendants and granting summary judgment in favor of the plaintiff as to defendants' tenth affirmative defense.

■ The final issue defendants raise is whether the trial court erred in accepting the plaintiff's proof of damages. Defendants argue that the plaintiff's sole witness as to damages was unable to substantiate the validity of the financial information he testified to, that an improper foundation was presented as to the evidence produced, and therefore, that the trial court erred in finding that plaintiff sustained its burden of proof on damages.

To prove damages, the plaintiff called James Steinmann, senior loan-accounting analyst for the Farm Credit Bank. He testified that his duties included establishing the outstanding amount of indebtedness on defaulted loans. Steinmann testified that this note was accelerated on October 29, 1986, and that it had an unmatured principal at that time of $266,519.18. In calculating defendants' indebtedness, Steinmann testified that he relied on the records of the Farm Credit Bank, which were tendered as exhibits 5, 6, and 7. Exhibit 5 is a pay-

ment history which outlines all of the payments made by the defendants from the time the loan was made until the time the loan was accelerated because of default. Exhibit 6 is a statement of indebtedness on the note, showing the amount owed at the time of acceleration and all of the activity on the loan since acceleration. Steinmann referred to exhibit 6 and testified that the outstanding principal at the time of acceleration was $331,635.47. Steinmann testified that exhibit 7 consists of copies of the microfiche from the original accounting system and copies of the payment history in the present accounting system generated by the bank's computer system. Steinmann testified as to the reliability of the computer system and the accuracy of the exhibits and that the exhibits are business records kept in the ordinary course of business. He concluded that according to the Farm Credit Bank's records and his investigation of the matter, the total amount due on the note is $569,735.97. The court's order of foreclosure held that by the terms, conditions, and provisions of the mortgage and note, by the defaults in payment of principal and interest, by other defaults, and by the election of the plaintiff, $569,735.97 was due and owing.

Plaintiff had the burden not only of establishing that it sustained damages but also of establishing a reasonable basis for computation of those damages. (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808, 443 N.E.2d 36, 42.) A court of review will not disturb the trial court's findings as to damages unless those findings are manifestly against the weight of the evidence. (*City of Peoria Municipal Employees Association v. City of Peoria* (1991), 217 Ill. App. 3d 550, 555, 577 N.E.2d 819, 822.) While the trial court struck exhibit 7 as cumulative, exhibits 5 and 6 and Steinmann's testimony presented a reasonable method for computing the damages sustained. We hold that the trial court's finding as to the amount of damages is not against the manifest weight of the evidence.

In conclusion, we affirm the decision of the circuit court of Fayette County.

Affirmed.

LEWIS and WELCH, JJ., concur.