No. 3--01--0950

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

ILLINOIS-AMERICAN WATER ) Appeal from the Circuit Court

COMPANY, ) for the 10th Judicial Circuit,

 Plaintiff-Appellant, ) Peoria County, Illinois

)

v. ) No. 00 CH 248 

)

THE CITY OF PEORIA and ) Honorable

PEORIA AREA ADVANCEMENT ) Donald C. Courson

GROUP, L.L.C., ) Judge Presiding

Defendants-Appellees. ) 

) 

_________________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

In this declaratory judgment action, plaintiff Illinois-American Water Company (company) appeals the trial court's decision upholding the validity of a 113-year-old purchase option in an agreement between its predecessor and the City of Peoria for the sale of a water works.  The company also appeals the trial court's decision that it lacked standing to bring an action against defendant Peoria Area Advancement Group, L.L.C. (PAAG), for providing financing to the city for this litigation.  
Under the facts of this case, we affirm and hold as follows: (1) the city had the authority to include the purchase option in the agreement; (2) the purchase option is not perpetual in duration but continues throughout the life of the city; (3) the option was not terminable at will; (4) the purchase option was not preempted and superceded by the Public Utilities Act (Act) (220 ILCS 5/1-101 
et
 
seq.
 (West 2000)); (5) the purchase option is not unenforceable due to the doctrines of commercial frustration or impossibility of performance; and (6) the company did not have standing to contest the agreement between the city and PAAG.

FACTS

In 1889, the city and the company's predecessor entered into an agreement whereby the predecessor agreed to supply water to the citizens of the city at an agreed-upon rate.  In consideration for these services, the predecessor received from the city the existing water treatment facilities and mains.  The agreement was amended several times until it reached its present form, which has been in effect since 1906.

Section 4 of the agreement provides the company the right to use the public streets for a term of 30 years from the date of sale and delivery of the system.  Section 5 states that "[t]his Ordinance shall be in force and effect from and after its passage and publication and *** shall extend to all grantees, their successors and assigns."  Section 17 states:

"At the expiration of ten years from the date of the passage of this ordinance, or of any, except the second, five year period thereafter, the City of Peoria, as a municipal corporation, shall have the right to purchase the water works of the grantees, and all things pertaining thereto, as herein provided, ***

*** [T]he said City shall then have the right to exercise the option of purchasing or refusing to purchase the said water works at the price so fixed, excluding all distributing pipes, hydrants, etc., used for supplying water to consumers outside of the City limits.  PROVIDED, that nothing herein shall be so construed as to prevent the City purchasing the main pipes, reservoirs, machinery, pumping stations and supply wells and ground, etc., whether the same may be located within or without the limits of said City."

Section 18 of the agreement is entitled "Water for Fire Protection - Payments - How Made" and provides, in pertinent part, as follows:

"[T]he franchise and license hereby granted to and vested in the grantees shall remain in full force and effect during the term of thirty years from and after the sale and delivery of the present water works, but subject to the right of purchase as herein provided and to the other conditions herein imposed, but in the event of a failure to purchase said water works, as herein provided, on or before the expiration of said thirty years, said franchise and license shall then continue in full force and effect until such time as said city may purchase said works ***."

In October of 1998, the city council of Peoria voted to adopt a plan to acquire the water works.  Pursuant thereto, the city entered into a loan agreement with PAAG whereby PAAG was to loan the city money to finance its acquisition attempts, attorney fees and costs.  The company filed this action against the city and PAAG requesting a declaration that the agreement was outmoded, obsolete, and had been superseded or implicitly repealed by the Public Utilities Act 
(220 ILCS 5/1-101 
et
 
seq.
 (West 2000))
, and that the purchase option had expired and was repealed by the Eminent Domain Act (735 ILCS 5/7-101 
et
 
seq.
 (West 2000)).  The company also claimed that the city and PAAG conspired against it and that the agreement was illegal and against public policy.

The company and the city filed cross-motions for summary judgment on the declaratory judgment issues.  The trial court granted the city's motion and denied the company's motion.  Based on its determination that the company lacked standing, the court dismissed the conspiracy and illegal contract claims against the city and PAAG pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2000)).
  The company appealed.

Additional facts will be presented as they become pertinent to the analysis.

ANALYSIS

The issues on appeal are whether the trial court's decisions to grant summary judgment on the declaratory judgment claims and to dismiss the illegal contract and conspiracy claims (735 ILCS 5/2-619 (West 2000)) were proper.  T
his court uses a 
de
 
novo
 standard when reviewing a trial court's grant of summary judgment and dismissal pursuant to section 2-619. 
Grot v. First Bank of Schaumburg
, 292 Ill. App. 3d 88, 684 N.E.2d 1016 (1997)
; 
Denault v. Cote
, 319 Ill. App. 3d 886, 746 N.E.2d 765 (2001).

The company's first argument is that the city did not have the authority to include the option provision in the agreement when the agreement was entered into in 1889.  Because no statute expressly granted the city the authority to include the option, the company claims that the option is 
ultra
 
vires
, void, and unenforceable.

When interpreting a statute, the court's primary objective is to ascertain and give effect to the intent of the legislature. 
In re Marriage of Burgess
, 189 Ill. 2d 270, 725 N.E.2d 1266 (2000).  When determining legislative intent, the court must construe the language of the statute according to its plain and ordinary meaning. 
In re C.M.
, 282 Ill. App. 3d 990, 669 N.E.2d 707 (1996).  If the statutory language is clear and unambiguous, the statute's plain meaning will be given effect. 
People v. Whitney
, 188 Ill. 2d 91, 720 N.E.2d 225 (1999).

Section 3 of "An Act authorizing cities, *** to construct and maintain water works" provides that 
"[f]or the purpose of erecting, constructing, locating, maintaining or supplying such water works, any such city *** may go beyond its territorial limits, and may take, hold and acquire property and real estate, by purchase or otherwise ***."
 Ill. Rev. Stat. 1889, ch. 24, par. 256.
  

Based on a plain reading of this language, we conclude that the city had broad powers to acquire a water works system by purchase 
or
 
otherwise
.  In our view, the language of section 3 is broad enough to include a purchase option agreement.  
Because an ordinary construction of the language of section 3 allows for the inclusion of the purchase option in the agreement, we affirm.  See 
West v. Kirkham
, 147 Ill. 2d 1, 588 N.E.2d 1104 (1992) (finding that where the language of a statutory provision is clear, the statute must be given effect). 

The company's second argument is that the agreement and purchase option were
 limited to 30 years.  In the alternative, it argues that the option was terminated at will by the company when it resisted the city's past attempts to exercise the option, that the option was not exercised within a reasonable period after the 30-year term had expired, and/or that the option expired in 1988 at the end of the 99-year corporate life of the original grantee (the company's predecessor).  The city responds that the agreement was not limited to 30 or 99 years and that the company cannot now complain that the option was terminable at will or had to be exercised within a reasonable period because it failed to make those arguments in the trial court.

Provisions as to the duration of a contract are to be construed to effectuate the intention of the parties as evidenced by the language employed. 
Rooks v. Plavec
, 40 Ill. App. 2d 298, 188 N.E.2d 251 (1963).  If a contract is unambiguous in its expression of duration, the contract is not subject to judicial construction. 
Donahue v. Rockford Showcase & Fixture Co.
, 87 Ill. App. 2d 47, 230 N.E.2d 278 (1967).  A contract that fails to provide any recognizable basis for termination is ordinarily perpetual in duration and terminable at will by the parties.  See 
Jespersen v. Minnesota Mining & Manufacturing Co.
, 288 Ill. App. 3d 889, 681 N.E.2d 67 (1997).  Nevertheless, 
when a municipality grants a public service corporation the right to use 
its streets and no time is fixed as to when such rights should cease, the rights to use the streets do not exist in perpetuity but end when the municipality granting the right ceases to exist. See 
Venner v. Chicago City Ry. Co.
, 236 Ill. 349, 86 N.E.266 (1908).

We conclude that the trial court did not err when it determined that the option to purchase was not limited to a 30-year period.  Section 18 provides that, after the expiration of 30 years, the agreement "shall continue in full force and effect until such time that the city may purchase the [water] works."
  This 
language is clear, unambiguous and provides the city with the opportunity to purchase the water works beyond the 30-year period.  As the language does not fix a time in which the city must exercise the option, the option continues so long as the city remains in existence.  Therefore, the option provision is not perpetual in duration and is not terminable at will by the parties.  See 
People ex rel. City of Chicago v. Chicago Telephone Co.
, 220 Ill. 238, 77 N.E. 245 (1906) (providing that a municipal grant to a corporation to use its streets in order to supply telephone service to it citizens was not perpetual and continued throughout the life of the municipality).

The company contends that the agreement is limited to 30 years based on section 1 of "An Act to enable cities, *** to contract for a water supply for public use ***" (Ill. Rev. Stat. 1889, ch. 24, par. 266), which provides that cities, incorporated towns and villages may make contracts "for a supply of water for public use for a period not exceeding thirty years" (Ill. Rev. Stat. 1889, ch. 24, par. 266).  We do not agree with this contention.  Section 1 does not apply to this case because the city was not 
purchasing
 a supply of water but instead was selling its water works to the company with the agreement that the company would be supplying water directly to the citizens at an agreed-upon rate.

We also disagree with the company's assertion that the agreement and option expired in 1988 at the end of the 99-year corporate life of the original grantee
.  In 
Village of West City v. Illinois Commercial Telephone Co.
, 372 Ill. 493, 24 N.E. 2d 352 (1939), our supreme court stated that "[a] grant to a corporation of a right to use public streets which fixes no definite time for the continuation of the right is construed, 
in
 
the
 
absence
 
of
 
anything
 
to
 
show
 
a
 
contrary
 
intention
, as a license for the life of the grantee corporation." (Emphasis added.) 372 Ill. at 496, 24 N.E.2d at 353.

As stated previously, when read together, sections 17 and 18
 indicate a clear intention that the option will continue until the city purchases the water works.  Therefore, we hold that the option is not restricted to the corporate life of the original grantee.  See 
St. Clair County Turnpike Co. v. Illinois
, 96 U.S. 63, 24 L. Ed 651 (1878) (providing that a grant of a franchise to a corporation is not limited to the legal duration of the corporation if there is a clear expression to the contrary
).

Based on our decision that the option provision is not perpetual 
or terminable at will by the parties and that the option did not expire at the end of the 99-year corporate life of the original grantee, we need not address the company's claim that the option was not exercised within a reasonable time period.

The company's third argument is that the agreement and purchase option were preempted and superceded by the Public Utilities Act (Act) (220 ILCS 5/1-101 
et
 
seq.
 (West 2000)) and were thus ineffective.  The city responds that the Act did not affect the contractual provisions of the agreement but only the regulatory powers which were given to the state.

The Act 
was passed by the General Assembly in its exercise of its police power. 
Illinois Commerce Comm’n ex rel. Illinois Traction, Inc. v. Omphghent Township
, 326 Ill. 65, 156 N.E. 766 (1927).  The purpose of the Act was to give the public control over property used by the public for a common good. 
City of Chicago v. Alton R.R. Co.
, 355 Ill. 65, 188 N.E. 831 (1933).  When the Act grants to the state a specific right or power that conflicts with a similar right or power held by a municipality, the Act will prevail as a repeal by implication of the rights vested in the municipality. 
City of Geneseo v. Illinois Northern Utilities Co.
, 378 Ill. 506, 39 N.E.2d 26 (1941).  Although the Act is in derogation of the common law and is to be strictly construed in favor of those sought to be subjected to its operation, the Act will not be extended any further than what the language of the statute absolutely requires by its express terms or by clear implication. 
Tucker v. Illinois Power Co.
, 232 Ill. App. 3d 15, 597 N.E.2d 220 (1992).

We hold that the trial court correctly determined that the Act does not preempt or supercede the purchase option in the agreement in this case.  The purchase option grants to the city the right to repurchase the water works, and we find no language in the Act, express or implied, giving the state the power or authority to prohibit the inclusion of the option provision.  Although the regulatory powers granted to the state by the Act may preempt the regulatory provisions of the agreement (
Omphghent
, 326 Ill. at 70, 156 N.E.2 at 768
), we determine that the purchase option in no way conflicts with the Act.
  See, 
e.g.
, 
Geneseo v. Illinois Northern Utilities Co.
, 378 Ill. at 523, 39 N.E.2d at 35 (providing that the power vested in cities to permit or refuse a license or franchise to a public utility has not been repealed by the provisions of the Act).

The company's fourth argument is that the purchase option is unenforceable due to commercial frustration and impossibility of performance.  The company asserts that unforeseen changes in the law, such as the enactment of the Public Utilities Act (220 ILCS 5/1-101 
et
 
seq.
 (West 2000)
), and subsequent case law have rendered the substantive provisions of the agreement null.  As a result,  it claims that the city's authority over public utilities as provided in the agreement has been significantly reduced and eliminated.  T
he company also asserts that the city is permitted to purchase those portions of the distribution system that are used to supply water to city residents only, and not those that supply water to nonresidents.  Because the water system is now an integrated, regional system, it claims the purchase option is impossible to enforce as the parties intended.

The doctrine of commercial frustration will render a contract unenforceable if a party's performance under the contract is rendered meaningless due to an unforeseen change in circumstances. 
Smith v. Roberts
, 54 Ill. App. 3d 910, 370 N.E.2d 271 (1977).  In order to apply the doctrine of commercial frustration, there must be a frustrating event not reasonably foreseeable and the value of the parties' performance must be totally or almost totally destroyed by the frustrating cause. 
Smith
, 54 Ill. App. 3d at 913, 370 N.E.2d at 273.  Similarly, the doctrine of 
impossibility of performance will be applied if there is an unanticipated circumstance that has made the performance of the promise vitally different from what should reasonably have been within the contemplation of the parties when the contract was entered. 
Fisher v. United States Fidelity & Guaranty Co.
, 313 Ill. App. 66, 39 N.E.2d 67 (1942).  The doctrine of impossibility of performance requires that the circumstances creating the impossibility were not and could not have been anticipated by the parties, that the party asserting the doctrine did not contribute to the circumstances, and that the party demonstrate that it has tried all practical alternatives available to permit performance. 
Farm Credit Bank of St. Louis v. Dorr
, 250 Ill. App. 3d 1, 620 N.E.2d 549 (1993). 

We disagree with the company's assertion that either of the doctrines should be applied in this case.  Regarding the commercial frustration claim, the company failed to present any evidence that the enactment of the Public Utilities Act was not foreseeable by the parties when the contract was entered into in 1889.  The company also failed to present sufficient evidence that there was a frustrating event that destroyed the value of the parties' performance
.  Although the company asserts that the value of the city's performance under the agreement was destroyed by subsequent changes in the law, we have previously determined that the Public Utilities Act did not render the purchase option void.  See 
American National Bank in DeKalb v. Richoz
, 189 Ill. App. 3d 775, 545 N.E.2d 550 (1989) (finding that the doctrine of commercial frustration is not to be applied liberally).

We also do not agree with the company's claim that the doctrine of impossibility of performance should apply.  The 
company failed to present sufficient evidence to show that performance, even if difficult, is impossible.  In addition, although the company asserts that the current regional water system was not the system contemplated by the parties, section 17 of the agreement states that "nothing herein shall be so construed as to prevent the City purchasing the main pipes, reservoirs, machinery, pumping stations and supply wells and grounds, etc., whether the same may be located 
within
 
or
 
without
 
the
 
limits
 
of
 
said
 
City
." (Emphasis added.)  Because this language seems to recognize that nonresidents would be using the water system, both the company and the city had notice that the option could apply even if the system supplied water to nonresidents.  See 
Felbinger & Co. v. Traiforos
, 76 Ill. App. 3d 725, 394 N.E.2d 1283 (1979) (finding that if a party has knowledge that subsequent circumstances could render a contract impossible to perform, the doctrine of impossibility is not available).

Finally, the company argues that the 
trial court improperly determined that it did not have standing to contest the agreement between the city and PAAG regarding the financing for this litigation.  The company contends that the agreement was illegal and that the city and PAAG conspired against it to facilitate the illegal acquisition of the water works without the necessity of a referendum or compliance with the Eminent Domain Act (735 ILCS 5/7-101 
et
 
seq.
 (West 2000)).

The purpose of the standing requirement is to preclude a person having no interest in a controversy from bringing suit. 
Brockett v. Davis
, 325 Ill. App. 3d 727, 762 N.E.2d 513 (2001).  
In order for a party to have standing, the party must suffer some injury in fact to a legally cognizable interest and must have sustained, or be in immediate danger of sustaining, a direct injury as a result of the complained-of conduct. 
Brockett
, 325 Ill. App. 3d at 730, 762 N.E.2d at 516.
  That a party may suffer in some abstract way will not suffice; there must be a direct injury to his property or rights. 
Brockett
, 325 Ill. App. 3d at 730-31, 762 N.E.2d at 516.

Based on our review of the complaint, we hold that the trial court did not err when it dismissed the company's claims against PAAG based on lack of standing.  The company failed to plead sufficient facts in the complaint to show that it suffered a direct 
injury to a legally cognizable interest as a result of the contract between the city and PAAG.  The contract attached to the complaint stated that PAAG will provide funding to the city for its efforts to purchase the water system.  The 
company failed to allege, however, that it was either a party to that contract or a third-party beneficiary of it.  Although the company did allege that it will be harmed financially if the city succeeds in purchasing the water system, it did not allege facts which demonstrate that the harm is a direct result of the city's contract with PAAG.  
Accordingly, we affirm the decision of the trial court dismissing the action against PAAG.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HOMER and SLATER, JJ., concur.